MILLER and another *v.* WATTIER.

(*Circuit Court, D. Oregon.* June 17, 1885.)

1. REMOVAL OF CAUSE — SUIT ARISING UNDER A LAW OF THE UNITED STATES.
   A suit by a vendee of the state under the act of October 26, 1870, providing for the selection and sale of the swamp and overflowed lands granted to the state by the act of March 12, 1860, to enjoin the commission of a nuisance on the land so purchased, involves the question of whether said land was granted to the state by said act at the time of its selection by the state under said act of 1870, and therefore arises under said act of March 12, 1860, and is removable into this court under section 2 of the act of March 3, 1875, without reference to the nature of the other questions that may be involved in it.

Suit to Enjoin the Commission of a Nuisance.

*N. B. Knight*, for plaintiffs.

*H. Y. Thompson* and *George H. Williams*, for defendant.

DEADY, J. This is a suit in equity, brought by the plaintiffs in the state circuit court for the county of Marion, to enjoin the defendant from maintaining a certain dam on Little Pudding river, on the ground that the same causes the water to flow back on the plaintiffs' lands, and is therefore a nuisance. The defendant answered the complaint, and then removed the cause to this court on the ground that the controversy in the case arises under the act of congress of March 12, 1860, granting the swamp and overflowed land in Oregon to the state. The plaintiffs now move to remand the cause for the reasons following:

(1) It does not appear that a copy of the record has been filed in this court as required by law. (2) It does not appear that the case is one arising under the constitution or laws of the United States. (3) The court has no jurisdiction of the parties or subject-matter.

In support of the first point, it is stated by counsel, and such appears to be the fact, that the clerk of the state court, instead of making a "copy" of the record for this court, has put together the original papers, with copies of the journal entries, and delivered them to the defendant for that purpose.

The act of 1875 (18 St. 471) requires the party removing a cause to file "a copy of the record" in the court to which it is removed. The law devolves on the party, and not the clerk, the duty of procuring and filing a copy of the record; but if the clerk refuses to furnish such copy when duly demanded, he may be proceeded against both civilly and criminally. But there is no virtue or convenience in the copy that the original does not possess, and the former is only required because it would be inconvenient, if not improper, to deprive the state court of the latter,—the usual and proper evidence of acts done and suffered therein. But the fact is, the state court has voluntarily furnished the defendant with a portion of the record, instead of a copy of the same, for filing and use here, and I do not think the plaintiffs ought to be heard to object to it. They are not injured nor incon-

venienced by it; in fine, it does not concern them. For all the purposes of removal, and jurisdiction to hear and determine the cause, the original is equivalent to the copy; and in filing it the defendant has substantially complied with the statute. It is not unlikely that the original papers were sent here by mistake of the clerk; and, if such is the case, and the clerk shall apply to have the error corrected, it will be proper to allow the originals to be withdrawn from the files of this court, and copies thereof filed in their place. There is no claim that this court has jurisdiction of this case by reason of the citizenship of the parties. It was removed on the ground that it arose under a law of the United States, and therefore it is not necessary to further consider the third point made in support of the motion to remand.

A statement of the facts contained in the proceedings is necessary to the consideration of the second point.

The plaintiffs allege in their complaint that on March 12, 1860, 12 certain parcels of land, containing in all 877.67 acres, and described therein as being lots and subdivisions of certain sections, according to the public surveys, situate in Marion county, and constituting "a part of what is known as Lake Labish," (evidently a mere early phonetic spelling of the French *La Biche* or Deer lake,) were, and still are, "swamp and overflowed," within the meaning of the act of congress of that date, and as such were by the same granted to the state of Oregon; that in pursuance of an act of the legislative assembly of Oregon, entitled "An act providing for the selection and sale of the swamp and overflowed lands belonging to the state of Oregon," approved October 26, 1870, the board of commissioners for the sale of school and university lands, on November 11, 1871, duly selected said lands as *inuring* to the state of Oregon under said act of March 12, 1860; that on April 9, 1872, said board duly sold said lands to the plaintiff, John F. Miller, "as swamp and overflowed," he then paying 20 per centum of the purchase price, and receiving from "said board his certificate of the purchase of the same," who afterwards sold an interest therein to the plaintiff, W. P. Miller; that in 1882 the selection of said lands as aforesaid was approved by an agent of the United States "specially appointed for the purpose of examining and reporting upon the character of the lands claimed by the state as swamp and overflowed," but that patents have not been issued to the state for the same; that the defendant is the owner of a grist and saw mill on Big Pudding river, in said county, and known as "The Parkersville Mills;" that said mills are near Little Pudding river, "a constant stream" running through a portion of said lands, "in a clearly defined and distinct channel, where it has been accustomed to run from time immemorial, and near the northeastern extremity of said lands empties into Big Pudding river, a short distance above the defendant's mills;" that near said point the defendant "wrongfully and unlawfully maintains and keeps a dam

about seven feet high across Little Pudding river, whereby its waters "are raised and thrown over its banks, flooding a scope of country," including said lands, "of about five miles long and from one-half to three-quarters of a mile wide, and rendering the same utterly worthless;" that if said dam was removed, and said waters "allowed to flow in their natural channel," said "lands could be drained and reclaimed," and "made valuable for hay and pasturage;" that the only practical method of draining said lands is through the channel of the Little Pudding river, and so long as said dam remains "as it now is" they cannot be reclaimed, and the plaintiffs cannot perfect their title to the same; and that, although said dam has been adjudged a nuisance by the supreme court of the state, and the defendant has been requested by the plaintiffs to remove the same, he still continues to maintain it, "to the great nuisance of plaintiffs' said lands."

By his answer the defendant first simply denies *seriatim* the allegations of the bill, except the payment to the commissioners, and his own ownership of the Parkersville mills, and then proceeds to answer them in detail. And, *first*, he alleges that prior to 1850 William Parker took up and settled on donation No. 49, containing 640 acres, under the donation act of September 27, 1850, and on April 28, 1875, a patent was issued therefor,—the east half to his widow, and the west one to his heirs at law; that the southern part of the western boundary of said donation abuts on the north-eastern end of Lake La Biche, (Labish,) and Little Pudding river enters said donation through said part of said boundary, and thence flows across the same, where it has from time immemorial; that in 1850 said Parker erected a dam about six feet high across said river, near where it enters said donation, whereby its waters were raised and set back on said lake, which is an expansion of the river, and constructed a race therefrom on said donation about 80 yards long, wherein to conduct the water of said river for manufacturing purposes, and built a saw-mill at the lower end thereof; and that in 1852 he also built a grist-mill near the same point, which was, and ever since has been, run by water flowing through said race; that such dam remains where and as it was first erected, and the water continues to flow through said race as it has since 1850; that said dam, race, and mills are all on the west half of said donation, of which the defendant is the owner, together with the land on which they are situate, and all the water-power and privileges thereunto appertaining, and is now profitably engaged in running said mills by means of the water flowing through said race; that said mill property, with the water-power and privilege aforesaid, is worth $12,000, but if said dam is removed, and the water diverted therefrom, it will be of little value, and the defendant will be damaged thereby not less than $10,000.

The answer then avers: (1) That the United States surveys were extended over these lands in 1852, including the usual subdivisions; that the alleged listing and locating of said lands is illegal and void,

because the same was not made according to the legal subdivisions, and because the same and each parcel thereof is located in legal subdivisions, the greater part whereof is not wet and unfit for cultivation, and are therefore reserved to the United States by the act of March 12, 1860, and are now a part of the public domain. (2) That although the said lands were surveyed in 1852, and there was a regular session of the legislature of Oregon held in 1862, and biennially ever since, the alleged selection of said lands was not made until November, 1871, and therefore the act of March 12, 1860, does not apply to them; and that no selection of said lands has been approved by the commissioner of the general land-office, nor has any patent been issued for the same to the state. (3) That although 10 years have elapsed since the payment of 20 cents an acre to the state for said lands, no proof of any reclamation thereof has been made, nor have said lands been reclaimed, but they are now in the same condition, as to being wet and uncultivatable, that they were at the date of the alleged purchase from the state. (4) That the plaintiffs have not, nor never had, the possession of said lands, or any right thereto; nor have they or either of them any right, title, or interest in or to the same. (5) That after the defendant heard that the plaintiff John F. Miller claimed said lands as swamp, he called on him and proposed some arrangement by which he could protect his property from injury resulting from the diversion of the water that supplied his mills, when said plaintiff told the defendant, in substance and effect, that such an arrangement was unnecessary, as the latter "held the key to the situation," and that no water could or would be drawn off said lands without his consent, and that, relying on said statement, the defendant expended about $8,000 in improving said property; wherefore, plaintiffs are estopped, without the defendant's consent, from reducing the water above his dam. (6) That the defendant and those under whom he claims have been in the undisturbed, open, and notorious possession and use of the premises, including said water-power and privilege, for more than 30 years, and that he has acquired a right thereto by prescription. (7) That prior to 1850, and the construction of said dam, Lake La Biche (Labish) was a permanent body of water created by the expansion of Little Pudding river, and said lands were then covered with water, which the unobstructed channel of said river would not drain off and make fit for cultivation.

On the argument of the motion to remand, counsel for the plaintiffs maintained the proposition that it is not sufficient to give this court jurisdiction that it is asserted in the answer or petition for removal that the case arises under a law of the United States, or that the construction of one might become necessary in the course of the trial of it; citing *Millingar* v. *Hartupee*, 6 Wall. 258, and *Gold Washing & Water Co.* v. *Keyes*, 96 U. S. 199. The proposition is not denied, and the authorities support it. But this is quite a different case from either of those.

In the latter case Mr. Justice WAITE says:

"Nothing was stated (in the complaint) from which it could in any manner be inferred that the defendants sought to justify the acts complained of by any such authority, (the constitution or laws of the United States.)"

The petition for removal was the only pleading on the part of the company, and that stated its ownership, derived from the United States, of certain mining land that only could be worked by the hydraulic process, which required the use of Bear river and its tributaries, and asserted that it acquired the right to so use the river under certain specified acts of congress, the construction of which were necessarily involved in the determination of the case, without, as the chief justice says, stating any facts to show the right it claims, or "to enable the court to see whether it necessarily depends upon the construction of the statutes;" to which he adds:

"The immunities of the statutes are, in effect, conclusions of law from the existence of particular facts. Protection is not afforded to all under all circumstances. In pleading the statute, therefore, the facts must be stated which call it into operation. The averment that it is in operation will not be enough; for that is the precise question the court is called upon to determine."

The former case was a writ of error to a state court under section 25 of the old judiciary act, and the question was whether a right claimed by the plaintiff in error, and which was decided against him in the court below, was derived from "an authority exercised under the United States," to-wit, an order of the United States district court. But it plainly appearing to the court that the order in question gave no such right, the writ was summarily dismissed, the chief justice saying, as he did so: "Something more than a bare assertion of such authority seems essential to the jurisdiction of this court."

But in this case there is a distinct assertion in the complaint that the lands in question are swamp and overflowed, and that they were so on March 12, 1860, and that as such were still within the purview and operation of that act in November, 1871, and liable to be selected by the state as the grantee thereof, and that they were so selected, and passed as such from the latter to the plaintiffs by purchase in 1872, all of which statements are denied and controverted by the answer of the defendant. Admitting all this, counsel for the plaintiffs contends that "the matter in dispute" is the right of the defendant to maintain this dam as against the plaintiffs, and that such dispute does not arise under an act of congress, and its determination only involves the question of whether or not the dam is a nuisance.

Section 2 of the act of 1875 (18 St. 470) gives the right to remove from a state court to this court any suit "arising under the constitution or laws of the United States," where "the matter in dispute" exceeds the sum or value of $500. "The matter in dispute" may be real or personal property, or damages for an injury to either, or to the person; but in any case it must exceed $500 in amount or value. This is the money element of the jurisdiction; and the other is, that the suit in

which this "dispute" is to be determined must arise under a law of the United States. The value of "the matter in dispute," and not its nature, is to be considered. But if the suit brought for the determination of this "dispute" necessarily involves the construction or application of an act of congress, then such suit arises under such act. As was said by this court in. *Hughes* v. *Northern Pacific Ry. Co.* 9 Sawy. 319; S. C. 18 FED. REP. 106:

"A controversy which turns upon the existence, effect, or operation of an act of congress, arises under such act, and a suit brought to determine the same is a case arising under such act, within the meaning of the statute."

An action may be brought to recover the possession of a tract of land. "The matter in dispute" in such action is the right to the land, or the possession thereof. But that may depend on the legality or effect of a prior sale of the premises for delinquent taxes under an act of congress. In such case the action or controversy, without reference to the nature of the thing in dispute, arises under such act, whether invoked by the plaintiff or defendant, and is within the jurisdiction of the national courts. Nor is it material that other questions, in nowise depending upon the laws of the United States, are involved in the determination of the case. As was said by Mr. Justice HARLAN in *Railroad Co.* v. *Mississippi*, 102 U. S. 141:

"It is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the constitution or laws of the United States; but when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is within the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it."

Admitting, then, all that the plaintiffs claim in the argument,—as that the defendant cannot take advantage in this suit of any failure on the part of the plaintiffs to reclaim these lands or pay the remainder of the purchase price, on the ground that they are conditions subsequent to the grant or sale to the plaintiffs, for a breach of which no one can complain but the state; and that the question of whether the dam is a nuisance to these lands, or whether the plaintiffs are estopped to complain thereof, or whether defendant has acquired a right to flow these lands by prescription, are questions that do not arise under any act of congress,—still the plaintiffs' case, on their own showing, arises under the act of congress of March 12, 1860. They make no claim to any right, title, or interest in these lands except under this act, and in effect admit they have none other. Now, if the facts do not bring them within the purview or operation of the act,—as, if the lands are not swamp or overflowed within the meaning of the same, because the greater part thereof are not "wet and unfit for cultivation," or the right of the state thereto was lost by lapse of time long before the passage of the act of October 26, 1870, because the selection thereof was not made within two years from the adjournment of the

session of the legislature next after the passage of the act of March 12, 1860, as alleged in the defendant's answer,—then they are mere strangers to the premises, and cannot maintain any suit to abate or enjoin a private nuisance thereto or thereon.

So far, at least, then, this is a suit arising under a law of the United States, and removable to this court, under the first clause of section 2 of the act of March 3, 1875.

The motion to remand is therefore denied.