Ex parte BECK.

(District Court, D. Montana. September 29, 1917.)

No. 620.

1. ARMY AND NAVY ☜20—DRAFT BOARDS—JURISDICTION.

Special tribunals, such as local and district boards created by Selective Draft Act May 18, 1917, are quasi judicial bodies of inferior and limited jurisdiction, and have authority to hear and determine only such matters as the law directs.

2. JUDGMENT ☜477—QUASI JUDICIAL TRIBUNALS—VALIDITY—COLLATERAL ATTACK.

Decisions of quasi judicial tribunals of limited jurisdiction, if unaffected by fraud or mistake, are conclusive, whenever collaterally questioned, where the tribunal has proceeded according to law and has not exceeded its jurisdiction, but are void, if in excess of jurisdiction, or contrary to law.

3. APPEAL AND ERROR ☜31—QUASI JUDICIAL TRIBUNALS.

Any person aggrieved by the proceedings of a quasi judicial administrative body may appeal to the civil courts.

4. JUDGMENT ☜496—QUASI JUDICIAL TRIBUNAL—COLLATERAL ATTACK—JURISDICTION—PRESUMPTION.

A judgment of an inferior quasi judicial tribunal of limited jurisdiction, when questioned in a civil court, cannot be upheld, unless the jurisdiction of the tribunal affirmatively appears; there being no presumptions in favor of the judgment.

5. JUDGMENT ☜496—COLLATERAL ATTACK—PLEADING AND PROVING JURISDICTION.

For a judgment of an inferior tribunal with quasi judicial powers to be upheld, its jurisdiction in the matter must not only be pleaded, but proven.

6. HABEAS CORPUS ☜23—ISSUANCE—RIGHT TO ISSUE WRIT.

Where the facts are not in dispute, but only a question of law is involved, in an attack on the judgment of a quasi judicial tribunal with inferior jurisdiction committing petitioner, a writ of habeas corpus may issue in the beginning, without delay to determine how the tribunal will act.

7. ARMY AND NAVY ☜20—SELECTIVE DRAFT LAW—ALIENS.

Selective Draft Act, requiring registration of men for military service, though requiring aliens who have not declared their intention to be-

come a citizen to register, exempts them from military service. Provision is made in the act for exemption of registrants, on filing claims for exemption within seven days after notice mailed to appear before the local boards for physical examination. The act also provides that, if any person fails to appear for physical examination, he shall be recorded as physically qualified, but if he later appears the board may examine him. Pamphlet 1917, form 19, p. 18, issued by the War Department, forbids local boards from calling or listing for military service aliens who have not declared their intention to become citizens. *Held*, that such an alien, though he did not, within seven days after the mailing of notice to appear for physical examination, claim his exemption, must, whenever his alienage is established, be granted his exemption, which is of a different nature than the exemptions given others for dependent families, etc., and he cannot, having claimed his exemption and shown his alienage, be lawfully certified into military service.

8. ARMY AND NAVY ⬤�science20—SELECTIVE DRAFT LAW—AUTHORITY OF DISTRICT BOARD—ALIENS.

After certifying relator to the local board for military service, a district board appointed under the Selective Draft Act is without jurisdiction to reject, on the ground that his alienage was not established, relator's claim for exemption as an alien who had not declared his intention of becoming a citizen.

9. HABEAS CORPUS ⬤➤16—ISSUANCE OF WRIT—RESTRAINT BY MILITARY AUTHORITY.

Where the certification of relator into military service was improper under the Selective Draft Act, relator being entitled to exemption as a nondeclarant alien, he is, having been arrested as a deserter and held for trial by court-martial, entitled to habeas corpus to secure his release.

10. HABEAS CORPUS ⬤➤34—ISSUANCE OF WRIT.

A writ of habeas corpus, directed to an army officer to secure the discharge of a nondeclarant alien who had been wrongfully certified into military service under the Selective Draft Act, cannot be denied on the theory that the army officer in obeying the writ would expose himself to punishment for violation of the orders of his superiors, for the officer's remedy is not by resistance to the writ of habeas corpus, but by appeal, and it cannot be assumed that his superiors, his orders being general, would direct him to disobey a mandate of the court having jurisdiction.

In the matter of the application of John Beck for writ of habeas corpus directed to one Jesse B. Roote, Major. Writ issued.

W. D. Rankin, of Helena, Mont., for petitioner.

B. K. Wheeler, U. S. Atty., and Jesse B. Roote, both of Butte, Mont., for respondent.

BOURQUIN, District Judge. This application for habeas corpus with haste has been instituted, rule nisi heard, argued, and decided, all summarily, indeed, in and because of which the parties have ignored defects of substance in practice, in petition, and in return, and for evidence resorted to admissions, statements, and other matter in the nature of evidence, all to the end that a grave issue might be speedily determined. The whole, including the decision, is unsatisfactory—the latter in research and reasoning, though not in judgment reached.

Petitioner seeks release from the custody of respondent, Maj. Jesse B. Roote, an army officer, who holds petitioner as a military prisoner charged with desertion and for trial by court-martial. Is petitioner in

military service? is the vital issue. If he is, the military have jurisdiction over him, and this court has not jurisdiction to release him by habeas corpus. If he is not in military service, the reverse is true. Whether or not he is in military service depends upon whether or not the selective draft local and district boards legally certified him for the draft.

Inquiring briefly into these boards, they are administrative bodies created by the selective draft law, with powers, duties, and procedure conferred by the law and rules not inconsistent with the law and prescribed by the President. They have many familiar analogies, viz. land department officials, immigration boards and inspectors, tax and customs boards, special and military commissions, courts-martial, and the like.

[1-4] Such bodies and persons are special tribunals vested by law with authority and duty to hear and determine such matters as the law directs. They are but quasi judicial, and of inferior and limited jurisdiction. But within this jurisdiction, if they proceed as the law directs, their decisions with some exceptions not material here, if unaffected by fraud or mistake, are conclusive upon the courts and wherever collaterally questioned. On the other hand, if they have not, or exceed their jurisdiction, or substantially depart from the procedure by law prescribed for them, their proceedings and decisions are without jurisdiction and void everywhere. Any person aggrieved by their proceedings can always appeal to the civil courts to inquire therein. Such inquiry extends no further than whether or not they had and kept within jurisdiction and proceeded in substantial conformity to statutes and rules, whether or not there is competent and adequate evidence tending to support their decisions, and whether or not the latter are free from fraud or mistake. If the answers thereto are affirmative, the courts cannot disturb the proceedings or decisions of such special tribunals. If negative, the courts must and will set them aside or deprive them of effect. When questioned in the civil courts, the rule in respect to all such tribunals is that set out in McClaughry v. Deming, 186 U. S. 63, 22 Sup. Ct. 786, 46 L. Ed. 1049 (wherein the court declared void the sentence of a court-martial), viz.:

"To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law. * * * There are no presumptions in its favor, so far as these matters are concerned. * * * Their authority is statutory, and the statute * * * must be followed throughout. The fact necessary to show their jurisdiction, and that their sentences were conformable to law, must be stated positively; and it is not enough that they may be inferred argumentatively."

[5, 6] And it is not enough to plead all this, but it must be proven by whomever would defend them. All this is familiar and settled law. Other cases variously illustrating it are Dynes v. Hoover, 20 How. 80, 15 L. Ed. 838, United States v. Grimley, 137 U. S. 147, 11 Sup. Ct. 54, 34 L. Ed. 636, Harnage v. Martin, 242 U. S. 386, 37 Sup. Ct. 148, 61 L. Ed. 382, and cases in them cited. Where the facts are not in

dispute, and so but a question of law, the writ issues in the beginning. There is no necessity to wait to see what the special tribunal will do. The one in custody is entitled to liberty. Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 171, 48 L. Ed. 317; United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917. Note that herein petitioner pursued the remedies, his before the boards, to the end.

[7-9] .With this law in mind, adverting to these proceedings, it appears petitioner is an alien, citizen of Denmark, who has not declared his intention to become a citizen of this country. Respondent indirectly admits alienage, and it has been so treated and argued throughout. In addition, it is proven by petitioner's affidavit hereinafter referred to and in evidence. The selective draft law excludes such aliens from the draft, and from armies to be raised by draft, but, to the end that they may be known and excluded, includes them in the registration. So clear is this, the War Department directs that, even though such aliens desire and ask to enter the military, the local boards must not call nor list them therefor. Pamphlet 1917, form 19, page 18, filed by respondent. All other men are included in the draft, though some may secure exemption.

There is a broad distinction between aliens' exclusion and others' exemption. Exclusion is aliens' right and the nation's right, which neither they nor boards can waive, because the law forbids to draft them. Exemption is others' privilege, which they can waive, or the boards in instances disallow, because the law permits to draft them. It is thought aliens' exclusion is intended less for the benefit of aliens than for the benefit of the nation, viz. so that the draft armies will be composed only of men who owe permanent allegiance, or are about to assume it, to this country, and so will be better soldiers. In principle, petitioner's case is like, but stronger than, that which resulted in Wise v. Withers, 3 Cranch (7 U. S.) 331, 2 L. Ed. 457. Therein a law for the District of Columbia provided for enrollment in the militia of all certain persons except those exempt by the laws of the United States. A United States law exempted from militia duty all United States officers. Wise was a justice of the peace, and the military authorities, denying he was a United States officer and exempt, enrolled him. Thereafter they tried him by court-martial and sentenced him to pay a fine. Refusing to pay, the collector of militia fines seized Wise's goods. Wise sued the officer in trespass. In holding Wise was entitled to recover, Chief Justice Marshall said:

Wise was a United States officer and exempt; "that a court-martial has no jurisdiction over" him "as a militiaman; he could never be legally enrolled; and it is a principle that a decision of such a tribunal, in a case clearly without its jurisdiction, cannot protect the officer who executes it. The court and the officer are all trespassers."

Had Wise been imprisoned, for the reasons stated by the great Chief Justice he would have been entitled to habeas corpus. Apparently the exemption there was an absolute exclusion like that of petitioner here. And here, as there, petitioner "could never be legally" certified; "a court-martial has no jurisdiction over" him; the court-martial and its

officer "are all trespassers" in proceeding against him. To sift out aliens, the War Department recognizes their exclusion is not an "exemption," as the term is used in the law; but, no special rule piovided for them, they are incorporated with and called exemptions for convenience. See Form 19, supra, page 20.

The rules provide that within seven days after notice mailed to appear before the local board for physical examination, claim for exemption must be filed, though the board may allow it to be filed later. And if the claimant within ten days thereafter, or later, if the board allows it, presents to the board an affidavit of prescribed form and substance, and such other evidence by affidavits as the board may require, the board "shall" exempt him. If any person fails to appear for physical examination, he shall be recorded as physically qualified; but, if he appears later, the board may examine him. If the board denies exemption, an appeal lies to the district board, which may receive additional evidence. The latter's decision is final in cases of aliens. After decision, the district board certifies all not exempt to the local board, which thereupon notifies those so certified that they are selected for military service and to report therefor at a time stated. From the latter time, those so notified are in the military service. The certification aforesaid is the last official act of the district board.

It appears petitioner did not receive the notice mailed to appear for physical examination, so failed both to file claim of exemption within seven days and also to appear for examination. Thereupon the local board recorded him physically qualified. Otherwise informed, petitioner appeared later and the board examined him. The next day he presented to said board his claim of alien exemption and supporting affidavit, in prescribed form and substance, and the board received and filed them. Later, without requiring other evidence, the board disallowed exemption, because the claim was filed too late. Petitioner appealed to the district board, and it affirmed the disallowance, without inquiry into the merits, and certified him to the local board. It notified petitioner that he was selected for military service and to appear therefor at a time stated. Petitioner so appeared, but in the meantime instituted herein habeas corpus proceedings against the local board. The night of the day petitioner had so appeared the district board took steps to quash said proceedings "for the good effect," and procured respondent to arrest petitioner as a deserter. It may here be noted that petitioner had not failed nor refused to appear, nor departed from his home, where arrested. Even if legally in military service, he had the right to inquire thereof in this court, without incurring unwarranted arrest as a deserter. The district board then spread upon its minutes its understanding of past events in relation to the proceedings, and concluded: " *   *   * Further, there is no sufficient proof of his being an alien." Respondent merely suggests that this is a "decision" by the district board, and conclusive. Without further comment upon this "decision," it suffices to say that at that time the board's jurisdiction over petitioner and the proceedings had ended—was exhausted when it certified him to the local board; so the "decision" is void. In view of the premises,

the court is constrained to and does hold that the boards so far departed from the procedure prescribed for them by the President that they exceeded their jurisdiction when they certified petitioner as not exempt and for the draft, and hence such certification is void. Since aliens cannot be lawfully drafted, the boards are bound to receive and determine upon the merits claims of alienage whenever filed, so long as the boards' jurisdiction has not expired by final certification of the claimants to the local board.

However they become satisfied of alienage, boards are bound to exclude aliens, even though no claims of exemption are filed; for otherwise the law is violated and also the board members' oath of office to "well and faithfully discharge the duties of" their office—in other words, to administer the law as Congress has written it. This exclusion is the vital thing, and time for claims and affidavits only incidental machinery to accomplish it. Taking the law and the rules by four corners, the rules themselves so intend. The defeat of claim of exemption by delay has no application to alien exclusion. And boards are instructed by the War Department to exclude aliens, even though they desire and ask to be included. Furthermore, the rules provide for opening defaults. The local board opened petitioner's. And the law and rules obviously intend that thereupon the decision of the claim shall be on the merits, and not an arbitrary rejection because of a sometime, but vacated, default. And that is the law in all legal procedure. In fact, the boards have not determined that petitioner is not an alien, but peremptorily denied his exemption. His affidavit of alienage, by the rules made full proof of alienage, unless the boards required more evidence, was ignored by them.

In respect to petitioner the boards' certification was no legal basis for the local board's notice to petitioner that he was selected for military service, and so said notice was by mistake and void. It follows petitioner was not at any time, and is not now, in the military service; so he is not a deserter, is illegally imprisoned by respondent, and is entitled to habeas corpus to compel his release, and it is awarded to him by the court. The King v. Commanding Officer, 1 K. B. 176, is not contra. There the status of the petitioner was determined on the merits, by the magistrate who filled the office of the boards here.

[10] Respondent suggests, somewhat significantly, the court is bound to say, that his superior officers order him to hold petitioner, and that to disobey may subject him to punishment, even that of death; that, if this court grants habeas corpus ordering him to release petitioner, respondent will be very embarrassed, in that obedience to either will be disobedience to the other. It is not understood that the orders to respondent are other than general, to imprison all deserters. It is not understood any order to respondent even hints to him to disobey a decree of any court of the United States—a decree that within its jurisdiction is the law of the land, therein to be held inviolate, to be executed and obeyed by military and civilians alike, so long as it is unreversed. Respondent's commander in chief, the President, is required by law and duty to uphold and execute as the law of the land any such decree

until reversed. All law requires him to do so; and no law, military or civil, permits him not to do so. That he will not do so, but, on the contrary, will unlawfully order respondent to resist the decree and writ, is unthinkable. Any such order and punishment of respondent for that disobedience of it, to which the law would constrain him, would be arrogance and tyranny equal, to put in mildly, to Prussia's worst, and demanding the earnest consideration of all men solicitous for law and order—for liberty. The suggestion is dismissed as unjust to respondent's superiors, gentlemen and officers of this great nation. At any rate, no court can be influenced by anything of that sort.

So long as courts are open, all litigants are free to enter them; and the courts, considerate of the jurisdiction of all analogous tribunals, and careful not to invade such jurisdiction, will administer justice within their own jurisdiction, confident their decrees will be executed and obeyed. Courts render decrees; other officers execute them; others obey them. Courts halt arbitrary conduct everywhere (for that the people created them), and defiance of their decrees in due time is always accounted for. In a decision, citation lost, it is recorded that in 1815, at New Orleans, under circumstances somewhat like the instant case, Gen. Jackson defied the court's writ of habeas corpus and imprisoned the judge. In due time, the general's power lapsing, by the court he was cited for contempt, and therefor he was fined (and he paid) $1,-000. And see Ex Parte Merryman, Fed. Cas. No. 9487.

Respondent's remedy is not resistance, but appeal, whereon the Supreme Court by rule provides that petitioner shall give bail to answer the judgment of the appellate court. And the Manual for Courts-Martial, 390, issued by the War Department directs respondent to "note an appeal."

The rule is made absolute, and the writ will issue.