UNITED STATES ex rel. PASCHER v. KINKEAD et al.

(District Court, D. New Jersey. March 4, 1918.)

1. ARMY AND NAVY ⬤➾20—SELECTIVE DRAFT ACT—AUTHORITY OF BOARDS.

Though Selective Draft Act May 18, 1917, c. 15, § 2, 40 Stat. 76, declares that aliens who have not declared their intention to become citizens and alien enemies shall not be drafted into military service and under proclamation of the President, the latter cannot be accepted, though willing; yet, as section 4 gives the local and district boards jurisdiction to hear and determine all questions of exemption and all questions of or claims for including or discharging individuals or classes of individuals from the selective draft, and section 5 requires all male persons within prescribed ages, including nondeclarant and enemy aliens, to register, as well as citizens, the local and district boards have jurisdiction to determine whether a registrant is an enemy alien, not subject to be drafted into military service.

2. CONSTITUTIONAL LAW ⬤➾80(2)—SEPARATION OF POWERS—AUTHORITY OF EXECUTIVE.

Congress may make decisions of executive departments, or subordinate officials thereof, to whom it has committed the execution of certain acts,

---

final on questions of fact; and the decisions of those officials cannot be reviewed, unless contrary to law or a fair hearing has been denied.

3. ARMY AND NAVY ☞20—SELECTIVE DRAFT ACT—DECISIONS OF DISTRICT BOARD.

As the Selective Draft Act provides that the decision of district boards on questions of exemption shall be final, save only as the President may see fit to modify or reverse them, the courts cannot disturb a decision of the district board on a question of fact, such as whether a registrant is an enemy alien, not subject to draft, unless a fair hearing has been denied, or there is no evidence to support the determination of the board, in which event it will be deemed contrary to law.

4. ARMY AND NAVY ☞20—SELECTIVE DRAFT ACT—DECISIONS OF DISTRICT BOARD.

On habeas corpus to obtain discharge from compulsory military service on the ground that relator was an enemy alien, evidence *held* to support finding by the local and district draft boards that relator, by reason of the naturalization of his father, had become a citizen, and hence the question cannot be reviewed.

5. EVIDENCE ☞82—PRESUMPTIONS—CORRECTNESS.

There is a presumption that an executive board exercising quasi judicial functions acted according to law.

Habeas Corpus. Application by the United States, on the relation of Max Pascher, for a writ of habeas corpus against Eugene F. Kinkead and others, acting as Local Board for Division No. 1, County of Hudson, State of New Jersey. Writ discharged, and relator remanded to custody of respondents.

William S. Bennet, of New York City, for relator.

Andrew J. Steelman, Asst. U. S. Atty., of Jersey City, N. J., for respondents.

HAIGHT, District Judge. The relator seeks to be discharged from compulsory military service, on the ground that he is a subject of the emperor of Austria, and hence an alien enemy. His claim for exemption on this ground was denied by the local exemption board, and, on appeal, by the district board. As appears by the return to the writ, the decisions of both boards were based on a finding that the relator is a citizen of this country.

[1] It is urged primarily that neither of these boards is vested by the Selective Draft Act of May 18, 1917, with jurisdiction to determine the question as to whether he is a citizen or an alien, and hence that their decisions can have no binding or other effect on this court. The argument to support this contention is that as, under section 2 of the Act, aliens who have not declared their intention of becoming citizens and all alien enemies are not only not subject to be drafted into military service, but, under the regulations promulgated by the President, pursuant to the act, alien enemies may not even be accepted, although they may be willing to serve, and as section 4, which specifies the classes of persons who are exempt or may be discharged from the draft, does not include either alien enemies or nondeclarant aliens, and as local boards and district boards are vested with jurisdiction only "to hear and determine * * * all questions of exemption under this act, and all questions of or claims for including or discharging

individuals or classes of individuals from the selective draft," the boards have no jurisdiction over questions arising in respect to alien enemies or nondeclarant aliens.

With this contention I am unable to agree. While nondeclarant aliens and alien enemies are not subject to be drafted, it is clear that jurisdiction to determine whether any given person is within those classes, and hence not subject to compulsory military service, must reside in some tribunal or officer. The whole scheme of the act is to lodge the decision of all questions respecting liability and nonliability to military service, primarily, in the local and district boards created by the act. Section 5 of the act provides that "all male persons" (this includes nondeclarant and enemy aliens, as well as citizens) between certain ages shall be required to register (Ruthenberg v. United States, 245 U. S. 478, 38 Sup. Ct. 168, 62 L. Ed. ——), and that "all persons so registered shall be and remain subject to draft into the forces hereby authorized, unless exempted or excused therefrom as in this act provided." The only method provided in the act for exempting or excusing registered persons is through the local and district boards. I think, therefore, that when the provision last above quoted is read in connection with that which confers jurisdiction upon the boards (heretofore quoted), that the conclusion is irresistible that it was the intention of Congress to commit to such boards the determination of whether any person, otherwise liable to military service, is an alien, either nondeclarant or enemy.

Such is the construction which has been given to the act by those charged with its administration, and also by the courts to which the question has in any way been presented. Angelus v. Sullivan, 24 Fed. 54, —— C. C. A. —— (C. C. A. 2d Cir.); United States ex rel. Koopowitz v. Finley, 245 Fed. 871 (D. C. S. D. N. Y.); In re Hutflis, 245 Fed. 798 (D. C. W. D. N. Y.); United States ex rel. Troiani v. Heyburn, 245 Fed. 360 (D. C. E. D. Pa.); Summertime v. Local Board Div. No. 10, 248 Fed. 832 (D. C. E. D. Mich.); United States ex rel. Cubyluck v. Bell, 248 Fed. 995 (D. C. E. D. N. Y.). I conclude, therefore, that the local board and the district board had jurisdiction to determine whether or not the relator is a subject of the emperor of Austria, as he claims, and hence an alien enemy not subject to be drafted into the military service.

[2, 3] The next question is whether their decision may be reviewed in this proceeding. The act provides that decisions of the district boards shall be "final," save only as the President may see fit to modify or reverse them. I think it may be considered as settled beyond all question that Congress may make the decisions of the executive departments or subordinate officials thereof, to whom it has committed the execution of acts similar in their general nature to this, final on questions of fact which arise in administering such acts; and, when it has done so, the courts may disturb such decisions only when it appears that the party involved has not been afforded a full and fair hearing, or that the executive officers have acted contrary to law, or have manifestly abused the discretion committed to them by the statute. It has been so held in respect to the present act in Angelus v.

Sullivan, supra; Koopowitz v. Finley, supra; In re Hutflis, supra; United States ex rel. Troiani v. Heyburn, supra; Summertime v. Local Board Div. No. 10, supra; Ex parte Beck, 245 Fed. 967 (D. C. Mont.) Such conclusion is the necessary result of a long line of decisions of the United States Supreme Court, some of which are as follows: Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 171, 48 L. Ed. 317; Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165; Zakomaite v. Wolf, 226 U. S. 272, 33 Sup. Ct. 31, 57 L. Ed. 218; Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967; Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. The Supreme Court has very recently held that the act in question is not repugnant to the Constitution, because it confers semijudicial powers upon administrative officers. Arver v. United States, 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. ——.

It is a necessary outgrowth of the above rule that if, in any given case, there was no evidence before such executive officers upon which they could reach a given conclusion, their decision can be reviewed by the courts, because in such a case they would have acted contrary to law, and, in effect, have denied a fair hearing. And so it has been uniformly held that, if there was any evidence before such officers to justify their conclusion, the courts could not disturb their findings of fact. No question is raised in this case that the relator did not have a fair hearing, in the sense that every opportunity was afforded to him to present evidence in support of his claim. The return of the local board is to the effect that they considered all of the evidence which is now before this court. It is permissible, therefore, to inquire in this proceeding only as to whether there was any evidence before the boards from which they could have found that the relator is a citizen of the United States.

[4, 5] The facts which were before them are these: When the relator registered on June 5, 1917, he stated that he was a naturalized citizen, and on August 16, 1917, presented to the local board a claim for discharge on the ground that his father and mother were dependent upon him for support. He did not then claim exemption on the ground that he is an alien. His claim for discharge was supported by the affidavit of his father, which contained a statement that the relator was then 29 years of age, as did also the relator's own affidavit. This claim was disallowed by both the local and district boards. Subsequently, in October, 1917, on an application to reopen his case, he presented to the local board affidavits of his father and mother to the effect that he had been born in Austria on May 15, 1887, and that his father was naturalized on the 29th of June, 1908. Accompanying the affidavit was a copy (which it must be considered that the boards treated as a true copy) of his father's petition for and certificate of naturalization. In the petition the father set forth that the relator was born on May 15, 1887, and in the certificate of naturalization, his name does

not appear as one of his father's children who was then under 21 years of age. There was presented to the board at the same time a clear argument by the petitioner's attorney, in which the pertinent provision of the Naturalization Act was quoted, to show that the petitioner did not become a citizen through his father's naturalization. Subsequently, in the questionaire which he was recently required to file, the relator made a claim for exemption on the ground that he is an alien enemy. In this he also stated that he had voted, and had not made any declaration of his intention to become a citizen. It thus appears that the board had before it, as evidence that the relator is a citizen of this country, his own declaration to that effect, the fact that he had voted, as well as one affidavit of his father; and as evidence that he is not a citizen, the statement in the father's petition for naturalization, made nearly ten years before, as to the date of his birth, and the fact that the certificate of naturalization did not contain the petitioner's name as one of his minor children. There was thus presented to the board a primary question of fact as to the relator's age at the time his father was naturalized. If he was then under 21 years of age, he became a citizen of this country by virtue of his father's naturalization; but, if he was then over 21 years of age, he did not. As before stated, there was evidence from which the board could find that he was under 21 years of age when his father was naturalized. I think I must conclude, from the return to the writ, strengthened as it is by the presumption that the board acted according to law, especially in the light of the letter of the relator's attorney to the local board, calling their attention to the law in respect to naturalization of children of aliens, that the boards decided, as a fact, that the relator was under 21 years of age when his father was naturalized. It appears from the questionaire that the petitioner had never made any declaration of intention to become a citizen, and consequently that he could not have been naturalized in his own right. There being, therefore, some evidence before the boards from which they could find as a fact that the relator was a naturalized citizen, through the naturalization of his father, I am not permitted to weigh the evidence which was before them and determine whether or not their decisions were contrary to the weight of evidence, but am bound by their finding.

Hence it follows that the writ must be discharged, and the relator remanded to the custody of the respondents.