**UNITED STATES ex rel. PASCIUTO v. BAIRD, Colonel, et al.**

Misc. No. 525.

District Court, E. D. New York.

June 20, 1941.

Charles L. Cusumano, of Brooklyn, N. Y., for relator.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Phillip J. Hirsch, Asst. U. S. Atty., of St. George, S. I., N. Y., of counsel), for respondents.

Thomas J. F. Kirk, of Brooklyn, N. Y., Government Appeal Agent, Local Board 173.

ABRUZZO, District Judge.

The writ of habeas corpus in this proceeding was obtained on behalf of Michael Pasciuto upon allegations contained in the petition by Charles L. Cusumano, his attorney.

He was inducted into the United States Army on May 14, 1941, and assigned to Camp Upton, Yaphank, Long Island, where he is still stationed.

This selectee claims that there was no substantial evidence to support the conclusion of the Local Board that the selectee herein has no dependents. He asserts that there is ample proof to indicate that he had bona fide dependents at the time he was inducted into the Army and that therefore he has been deprived of his liberty illegally.

A chronological recitation of the facts before the Local Board follows. The selectee received the Serial No. 3914, and on the drawing of the National Lottery, the said Serial No. 3914 received order No. 491 of this Board.

On December 3, 1940, in regular order, a questionnaire was sent to the selectee, addressed to him at No. 956–59th Street, Brooklyn, New York. The relator answered and mailed the said questionnaire to the Local Board which was received on December 9, 1941. The information given by the selectee on his questionnaire indicates that he had no physical or mental defects or disease; that he was a contractor on ladies' blouses, self-employer, having his own business; and that he had five dependents, namely: Anthony Pasciuto, male, sixty, father; support began in 1935; total support.

Emilia Pasciuto, feminine, fifty, mother; total support since 1935; her earnings, none.

Clara Pasciuto, feminine, twenty-seven, sister; dependency began March 9, 1940; total support, no income from any source.

Joseph Pasciuto, male, nineteen, brother; support started in 1935; total support; no other income.

Nicholas Pasciuto, male, seventeen, brother; total support since 1935; no other income.

The selectee's questionnaire also stated that the net cost of maintaining his home for twelve months was $2,200 and that his net income was approximately $3,800.

On December 17, 1940, the Local Board duly classified the selectee in Class I. On February 11, 1941, he was mailed a notice to report for a medical examination on February 13, 1941. The records indicate that the relator was examined, at which time he "complained of pain in spine so that he can't sit down. This pain comes about once a month". As a result, the relator was examined at the Methodist Hospital, on February 21, 1941, and the X-ray report is as follows:

"Methodist Hospital
"Department of Radiology
"Consultation Record
Draftee X-ray Report
"Name: Pasciuto, Michael
"Request: Lumbo-sacral spine
Office X-ray No. 50,693
Dr. Grillo

"No abnormality in detail or outline of the individual bodies comprising the lumbo-sacral spine is noted. Laterally, there is no evidence of spondylolisthesis, the angle falling within normal variable limits. There is no evidence of pilonidal cyst, which is reflected in the negative bone findings.

"Diagnosis: Negative
"Feb. 21st, 1941 Dr. John Pepe, Consultant"

On March 3, 1941, the Local Board, after consideration of the medical report, placed the selectee in Class I–A. After a request to appeal to the District Board of Appeal from such classification of Class I–A, the relator submitted an affidavit and a joint verified statement by Anthony Pasciuto, Emilia Pasciuto and Joseph Pasciuto, to the Appeal Board members, dated March 7, 1941, to the effect that they were totally dependent upon the relator.

Pursuant to a communication, the selectee was interviewed on March 13, 1941, by the Chairman of the Local Board and a Government Appeal Agent; and again on March 21, 1941, when he presented another affidavit setting forth the physical disability and dependency of his brother, Joseph Pasciuto, age twenty, and additional information as to his brothers and sisters as follows:

"Brother, Carmine M. Pasciuto, age 33, employed as Social Investigator by the Department of Welfare. Resides at 1050 62nd Street, Brooklyn, New York. Receives $1,799.99 per annum. Married and has three children. Cannot contribute to support of father's family.

"Sister, Mrs. Fannie Toscanini, resides at 1133–69th Street, Brooklyn, New York. Married and has four children. Cannot contribute.

"Sister, Mrs. Catherine Bruno, resides at 926–59th Street, Brooklyn, New York, married. One child. Unemployed. No contribution.

"Brother, Frank Pasciuto, resides at 1251–59th Street, Brooklyn. Married. No children. Unemployed. Expects employment in near future. Cannot contribute.

"Sister, Clara Pasciuto, resides at 956–59th Street. Single. Unemployed. Assists in shop and thereby earns her own livelihood.

"Sister, Mrs. Evelyn Di Paolo, age 25, married. One child. Unemployed. No contribution.

"Sister, Mrs. Antoinette Del Gaudio, resides at 1123–53rd St., Brooklyn, New York.

Married. One child. No contribution. Unemployed.

"Brother, Joseph Pasciuto, 956–59th Street, Brooklyn, New York. Single. Unemployed. Assists in shop and earns own livelihood."

The selectee further stated that his induction into the Army would result in the closing of his factory and his brother, Joseph, and his sister, Clara, would be without employment. He claims to have organized the business about September, 1940, and that his mother and sister, Clara, and brother, Nicholas, help to run the business while the selectee is away from it.

The selectee endeavored to convince the Local Board that since he obtained the work for the business his induction would so cripple the business, due to lack of work, that it would of necessity have to be discontinued.

With all of the data submitted by the selectee, then comprising his Case Record, the appeal was transmitted to the District Appeal Board for its review and consideration. Its conclusion, noted on the questionnaire, was as follows:

"Minutes of Action of Board of Appeal— The Board of Appeal classified the registrant Class 1, Subdivision 'A', by the following votes:

Ayes—3

Noes—0

"3/26/41    Julius Applebaum, Chairman."

The relator was sent a Notice of Continuance of Classification on March 27, 1941; and on April 4, 1941, an Order to Report for Induction was mailed to him, directing him to report to the Local Board at 7 A. M. on the 18th day of April, 1941.

The selectee, on his own accord, registered a complaint with Selective Service Headquarters, No. 331 Madison Avenue, New York City, as a result of which his induction was deferred until such time as an inquiry and investigation could be made by a Liaison Appeal Officer. On April 10, 1941, the selectee again presented himself before the Local Board at which the Liaison Appeal Officer was in attendance. After a thorough investigation by the Liaison Appeal Officer and a detailed report to the Selective Service Headquarters, the Chief of the Legal Division informed the Local Board on April 28, 1941, that the classification 1, subdivision "A", would not be disturbed.

A second order to Report for Induction on May 14, 1941, was sent to the selectee on April 29, 1941. On that date, May 14, 1941, the selectee was accepted by the Army officials at the Army Induction Center in Jamaica, New York; and on the same day, he appeared at the Local Board with his attorney, but pursuant to Regulations Nos. 165 and 166, the latter was not permitted to examine the Case Record. The selectee was sent to camp.

From a detailed review of all the data and testimony, it has developed that the selectee was a contractor in the finishing of ladies' blouses which he claims to have begun about September, 1940. He is twenty-two years of age, without any apparent prior business knowledge or experience, as indicated by his Work Record wherein he states that from 1935 to 1937 he was employed as an operator of a power press machine in cutting mica and other materials used in electrical appliances; and then, from 1938 to 1940, he was employed as a stock clerk.

Upon the hearing of this writ, the selectee does not now claim to be the sole support of his sister, Clara, nor of his brother, Nicholas; but claims three dependents: Anthony Pasciuto, father; Emilia Pasciuto, mother; and Joseph Pasciuto, brother.

It is apparent from the record that the selectee's mother, Emilia Pasciuto, and his sister, Clara Pasciuto, are actively employed in the business which the selectee claims he owns, which affords a substantial income, sufficient to support not only themselves but also the physically handicapped son (brother of selectee), Joseph. There appears to be no proof of the dependency of the father, Anthony Pasciuto. There was no evidence presented that the father could not work if he so desired.

The thorough detailed investigation of this case is illustrative of the interest and precaution taken by the authorities to insure the fair treatment of the selectee at the hands of the Local Board.

██ The law appears to be settled that the action of local boards within the scope of their authority is final and not subject to judicial review unless the board has acted contrary to law or has manifestly abused the discretion committed to them by statute.

The sole claim made here by the selectee is that there is no substantial proof to support the conclusion that the selectee has no dependents.

414

The Local Board was empowered to act under the Selective Training and Service Act of 1940, Section 10(a), Subsection (2), 50 U.S.C.A. Appendix § 310(a) (2), which provides: " * * * Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe. * * *"

Under a similar section, a number of cases have arisen, which have been reviewed in United States ex rel. Filomio v. Powell et al., D.C., 38 F.Supp. 183, which states at page 188:

"A number of cases arose following the enactment of the Selective Service Act of 1917, 50 U.S.C.A. § 226 note, in which use was sought to be made of the writ of habeas corpus for release from the army. Among them is the case of United States v. Kinkead, D.C., 248 F. 141, affirmed, 3 Cir., 250 F. 692, in which appears the following pertinent comment with reference to the decisions of draft boards and the conclusiveness of their determinations:

" 'The next question is whether their decision may be reviewed in this proceeding. The act provides that decisions of the district boards shall be "final," save only as the President may see fit to modify or reverse them. I think it may be considered as settled beyond all question that Congress may make the decisions of the executive departments or subordinate officials thereof, to whom it has committed the execution of acts similar in their general nature to this, final on questions of fact which arise in administering such acts; and, when it has done so, the courts may disturb such decisions only when it appears that the party involved has not been afforded a full and fair hearing, or that the executive officers have acted contrary to law, or have manifestly abused the discretion committed to them by the statute. It has been so held in respect to the present act in Angelus v. Sullivan, supra (2 Cir., 246 F. 54); (United States ex rel.) Koopowitz v. Finley, supra (D.C., 245 F. 871); (Ex parte) Hutflis, supra (D.C., 245 F.

798); United States ex rel. Troiani v. Heyburn, supra (D.C., 245 F. 360); Summertime v. Local Board, Div. No. 10, supra (D.C., 248 F. 832); Ex parte Beck (D.C. Mont.) 245 F. 967. Such conclusion is necessary result of a long line of decisions of the United States Supreme Court, some of which are as follows: Mishimura Ekiu v. United States, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905; Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317; Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Low Wah Suey v. Backus, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; Zakonaite v. Wolf, 226 U.S. 272, 33 S.Ct. 31, 57 L.Ed. 218; Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967; Gegiow v. Uhl, 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114; United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040. The Supreme Court has very recently held that the act in question is not repugnant to the Constitution, because it confers semijudicial powers upon administrative officers. * * *

" 'It is a necessary outgrowth of the above rule that if, in any given case, there was no evidence before such executive officers upon which they could reach a given conclusion, their decision can be reviewed by the courts, because in such a case they would have acted contrary to law, and, in effect, have denied a fair hearing. And so it has been uniformly held that, if there was any evidence before such officers to justify their conclusion, the courts could not disturb their findings of fact. No question is raised in this case that the relator did not have a fair hearing, in the sense that every opportunity was afforded to him to present evidence in support of his claim. The return of the local board is to the effect that they considered all of the evidence which is now before this court. It is permissible, therefore, to inquire in this proceeding only as to whether there was any evidence before the boards from which they could have found that the relator is a citizen of the United States.' 248 F. 141, 143, 144.

"Again in Ex parte Platt, D.C., 253 F. 413, the court said:

" 'There seems to be no merit to this second contention. The Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159 (62 L.Ed. 349), L.R.A.1918C, 361, Ann.Cas.1918B, 856, establish the proposition that the local board has the power to exercise certain judicial functions, even though it is not a court, and subject to the Judiciary Law as

a whole. The construction of the Draft Law * * * as indicating the intention of Congress, makes it certain, in the opinion of this court, that the determination of the local board is final, except by appeal to the district board or the President, in any case where the local board has authority to act. Such determination involves an exercise of judgment based upon such evidence as is before the board. It is like the determination of an executive officer or of a board of inquiry in an immigration hearing, and, when made final by Congress, is not the subject of appeal to the courts.' * * *

"Finally in Arbitman v. Woodside, 4 Cir., 258 F. 441, the court made the following comment: 'The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the finding supported by substantial evidence * * *.'"

There is nothing before this court in the case record or in the testimony taken at the hearing to indicate in the slightest that the investigation was not fair or that the board in any way abused its discretion or made its findings capriciously or arbitrarily.

On the contrary, it appears clearly that the Local Board had sufficient evidence to make a finding that this selectee did not have the dependents claimed by him. The board had ample evidence before it to find that the mother and sister could capably manage the business and that they were not dependents. The board was justified in finding that the father was not a dependent. There is no other conclusion to be reached from the Case Record.

The selectee was not entirely truthful. The Local Board was justified in feeling that his veracity was questionable. It was difficult for them to believe that this young man, without any experience, was the sole owner of the business and that it could not function if he were inducted into the Army.

Upon the argument of this writ, it developed that the business was still running although the selectee had already been inducted for some time.

In his questionnaire, the selectee claimed to be the sole support of five dependents. This appeared to be doubtful and unbelievable. Before this court, he now claims that there are only three solely dependent upon him for support.

■ The complete picture presented before the Local Board was not one to inspire confidence or belief in the statements made by him. Selectees should realize the great burden placed upon the local boards under the law. The statements made by the registrants or selectees should be entirely accurate and they should be held to strict accountability for each and every statement made.

■ The finding of this Local Board which resulted in the induction into the Army of this selectee was just and proper. The Local Board acted within the scope of its authority as established by the Selective Training and Service Act of 1940, Section 10(a), Sub-section (2). The induction of this selectee into the Army by virtue of this act and the decisions interpreting the scope and power of the local boards was justified.

There is nothing in this Case Record which warrants the altering of the determinations of the Local Board, the District Board of Appeal and the Selective Service Headquarters.

The relief sought by the selectee, the relator herein, is denied; and the writ of habeas corpus must be discharged.