ARBITMAN v. WOODSIDE et al.

(Circuit Court of Appeals, Fourth Circuit. April 17, 1919.)

No. 1673.

1. ARMY AND NAVY ⊙⇒20—EXEMPTION BOARDS—REVIEW BY COURT.

Action of an exemption board within the scope of its authority is final, and not subject to judicial review, when the investigation has been fair and its finding is supported by substantial evidence.

2. HABEAS CORPUS ⊙⇒16—DISCHARGE FROM MILITARY SERVICE.

On proof that investigation by an exemption board has not been fair, or that it has abused its discretion by a finding contrary to all the substantial evidence, relief should be given under writ of habeas corpus.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. ARMY AND NAVY ⟨⟨⟩⟩20—EXEMPTION BOARDS—UNFAIR REJECTION OF CLAIMS.
  Rejection by exemption board of petitioner's claim to exemption as an alien who had not declared his intention to become a citizen, his showing being prima facie sufficient, and in no way met, but being disbelieved merely because other claims for exemption had been supported by false affidavits, was arbitrary and unfair, amounting to refusal to investigate.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Habeas corpus proceeding by Samuel Arbitman against Capt. H. N. Woodside, commanding First Separate Detachment Company, 154 Depot Brigade, and the military authorities of Camp Meade, Md. Application for writ dismissed, and petitioner appeals. Reversed.

Joseph Hettleman, of Baltimore, Md., for appellant.
Samuel K. Dennis, U. S. Atty., of Baltimore, Md., for appellees.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge. Appellant, Samuel Arbitman, by writ of habeas corpus applied to Judge Rose of the district of Maryland for discharge from military service at Camp Meade, alleging himself to be a citizen of Russia who had not declared his intention to become a citizen of the United States, and that the action of local exemption board No. 1 of Philadelphia in placing him in class A1, and of the district board in sustaining the classification, was arbitrary, unfair, fraudulent, and in abuse of discretion. After hearing testimony, the District Judge dismissed the application, holding that the boards had given petitioner a fair hearing, and that therefore he had no jurisdiction to review their action by habeas corpus.

[1, 2] The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the finding supported by substantial evidence; but upon proof that the investigation has not been fair, or that the board has abused its discretion by a finding contrary to all the substantial evidence, relief should be given by the courts under the writ of habeas corpus. United States v. Ju Toy, 198 U. S. 253–280, 25 Sup. Ct. 644, 49 L. Ed. 1040; Lewis v. Frick, 233 U. S. 291–304, 34 Sup. Ct. 488, 58 L. Ed. 967; Tang Tun v. Edsell, 223 U. S. 673–675, 32 Sup. Ct. 359, 56 L. Ed. 606; Low Wah Suey v. Backus, 225 U. S. 466–468, 32 Sup. Ct. 734, 56 L. Ed. 1165; Angelus v. Sullivan, 246 Fed. 54, 150 C. C. A. 280; Koopowitz v. Finley (D. C.) 245 Fed. 871; In re Hutflis (D. C.) 245 Fed. 798; United States ex rel. Troiani v. Heyburn (D. C.) 245 Fed. 360; Summertime v. Local Board Div. No. 10 (D. C.) 248 Fed. 832; Ex parte Beck (D. C.) 245 Fed. 967; Wong Yee Toon v. Stump, 233 Fed. 194, 147 C. C. A. 200.

In proof of his claim to be placed in class 5 as a resident alien who had not filed his first naturalization papers, Arbitman presented to the local board his own affidavit in precise accordance with the reg-

ulations and in the form prescribed by the Provost Marshal General, giving the date and place of his birth in Russia, the date of his immigration to this country, and stating that he had not taken out the first papers looking to naturalization; the affidavit of Samuel Portner and Isadore Portner to the same effect; a Russian passport, dated April 18, 1914, purporting to authorize him to move from place to place in Russia. On rejection of his claim to be placed in class 5 by the local board, and by the district board on review, Arbitman was taken to Camp Meade on January 3, 1918. On February 21, 1918, his attorney addressed a letter to Maj. Gen. J. E. Kuhn, in command of Camp Meade, asking for a discharge. Gen. Kuhn replied, stating that he could not review the matter, because the local board had given a full and fair hearing, and because relief had not been asked as required by the regulations within seven days after arrival at camp. The military authorities, however, apparently waived the time limit and considered the matter on the merits, for Gen. Kuhn did refer it to the adjutant general of Pennsylvania, who in turn referred it back to the local board, which refused to reconsider the case.

Petitioner's showing before the boards, made out in precise accordance with the requirements, established prima facie that he was a Russian citizen, and had taken no steps looking to naturalization. Nothing was offered tending to show that the affidavits to this effect were false, or that the passport was not genuine. The sole reason upon which the exemption was rejected was that the boards did not believe the affidavits; and the sole basis of this disbelief was the ease with which members of the board had found that such affidavits could be obtained. Nothing appeared tending to impeach the reputation or character of petitioner, or either of the other affiants, and nothing to show that any member of either board knew them to be unworthy of belief. Although the records of the immigration commissioner were open to the exemption officers, they made no effort to disprove the statement that Arbitman had not applied for naturalization papers.

[3] Under these circumstances, it seems to us that the rejection of petitioner's claim was arbitrary and unfair. It meant the refusal to investigate his claim and proofs on their own merits, merely because other claims for exemption had been supported by false affidavits. For this reason the judgment must be reversed.

This conclusion is no reflection on the character, competency, or good faith of the exemption boards of Philadelphia. The duties of the exemption boards were most onerous. The country's safety required quick decision and action on many difficult questions. These duties were discharged at great personal sacrifice, with so much ability, fidelity, and fairness, that the number of applications for judicial interference has been very small. It was inevitable that there should be an occasional slip, like that made by the boards in this case. The matter of surprise is that there were not more mistakes.

Reversed.