**UNITED STATES ex rel. CAMERON v. EMBREY et al.**

No. 1742.

District Court, D. Maryland.

Sept. 24, 1942.

Eli Cohan, of Baltimore, Md., for petitioner.

Allan Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for respondents.

CHESNUT, District Judge.

This case presents a petition filed by Grace Thiede, mother of Charles Edward Cameron, for a writ of habeas corpus to inquire into the detention of Charles Edward Cameron who has been inducted into the military service of the country under the Selective Training and Service Act of 1940 as amended, 50 U.S.C.A. Appendix § 301 et seq. The burden of the complaint is that Grace Thiede, the mother of Charles Edward Cameron, is dependent upon him for support, and for that reason the Local Draft Board No. 3 at Cumberland, Maryland, should have classified Cameron in class 3-A instead of his classification as made by it in class 1-A. On the petition an order to show cause was signed and hearing set for Monday, September 21, and postponed at the request of counsel to Tuesday, September 22, 1942, when the hearing was held. The respondents showed cause against the issuance of the writ by answer in which there is recited the various formal proceedings before Local Board No. 3 and the appropriate Appeals Board finally resulting in the order for induction of Cameron into the Army of the United States as of September 11, 1942. No formal traverse was filed by the petitioner to the answer.

It will be noted that the petition is for a writ of habeas corpus and that it has been filed not by the inducted soldier but by his mother. Her final statement as a witness in this case was that she was not insistent that her son should not be inducted into the Army at the appropriate time, but rather that he should be properly classified, on the basis of her dependency upon him, in order that she would receive a larger allowance from his pay when later inducted into the Army in accordance with his classification under 3-A as contended for. It is conceded by counsel for the petitioner that the court has no authority to re-classify Cameron, as that is the function of the Local Boards, but nevertheless it is urged that unless Cameron is properly re-classified he should be released by the court under this writ of habeas corpus on the ground that he is illegally deprived of his liberty. The United States Attorney, Mr. Flynn, appearing for the respondent Army officers, makes no objection to the procedure in that the application is made by the soldier's mother rather than by himself, especially as it appears that Cameron is fully cooperating with his mother as the petitioner in the case. Nor is any question raised as to the propriety of the procedure in applying for the writ of habeas corpus. See Arbitman v. Woodside, 4th Cir., 258 F. 441.

Before stating the ultimate facts established by the testimony at the hearing, it is appropriate to refer to the controlling written law. The preamble to the Constitution of the United States recites that one of its purposes is to provide for the common defense. And Article I, section 8, empowers Congress to declare war and to raise and support armies, and maintain a Navy and to make rules for the government and regulation of the land and naval forces. During the first World War in which this country was a participant in 1917–18, there was in force the Selective Draft Act of 1917, 50 U.S.C.A. Appendix § 201, et seq. The present Selective Training and Service Act of 1940 as amended is a similar statute applicable prior to and during the present World War. The constitutionality of the present Act has not been challenged in this case but it has been upheld in a recent case in the Third Circuit, United States v. Lambert, 123 F.2d 395. The 1917 Act was held constitutional by the Supreme Court in the Selective Draft Law Cases (Arver v. United States), 245 U. S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas.1918B, 856.

This is apparently the first of the cases under the 1940 Act in this district, although there have been a number of federal decisions on similar issues in other districts, some reported and some not reported. See Petition of Soberman, D.C.N.Y., 37 F. Supp. 522; Dick v. Tevlin, D.C.N.Y., 37 F. Supp. 836; United States ex rel. Filomio v. Powell, D.C.N.J., 38 F.Supp. 183; Application of Greenberg, D.C.N.J., 39 F.Supp. 13; United States ex rel. Errichetti v. Baird, D.C.N.Y., 39 F.Supp. 388; United States ex rel. Ursitti v. Baird, D.C. N.Y., 39 F.Supp. 872; Checinski v. United States, 6th Cir., 129 F.2d 461; Rase v. United States, 6th Cir., 129 F.2d 204. See, also, cases reviewed in War Law Notes—

Judicial Review of Selective Service Board Classifications by Habeas Corpus—The George Washington Law Review, Vol. 10, 827. The effect of these cases as to the scope of judicial review of actions of Local Draft Boards is that the courts will not interfere with the action of the Board unless the classification order of the registrant under the Act has been made without a fair hearing, or the action of the Board has been arbitrary or capricious, or not based on substantial evidence. And this was the view taken by the Circuit Court of Appeals for this Fourth Circuit in a case under the 1917 Act, Arbitman v. Woodside, 4 Cir., 258 F. 441. None of the above cited cases under the present Act, except Application of Greenberg, has resulted in the release or reclassification of the registrant.

The controlling statutory provisions of the 1940 Act, so far as applicable to this particular case, are to be found in 50 U.S. C.A. Appendix § 305(e)(1) and 315(c). The former provides as follows:

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the *deferment* from training and service under this Act in the land and naval forces of the United States (1) of those men in a status with respect to persons *dependent* upon them for support which renders their deferment advisable". (Italics supplied.)

Section 315(c) provides:

"The term 'dependent' when used with respect to a person registered under the provisions of this Act includes only an individual (1) who is dependent in fact on such person for support in a reasonable manner, and (2) whose support in such a manner depends on income earned by such person in a business, occupation, or employment."

The applicable regulations issued by the President dealt with classification of registrants in "part 622". 622.11 provides generally that registrants available for general military service shall be classified as 1-A; and 622.31 provides that "In class 3-A shall be placed any registrant upon whom one or more dependents as defined in section 622.32 depend for support in a reasonable manner, and who is not engaged in a civilian activity which is necessary to war production or which is supporting the war effort." 622.32 provides: "A person shall be considered a registrant's dependent only when all of the following are satisfied: (1)

Such person must be the registrant's wife, divorced wife, child, parent, grandparent, brother, or sister, or must be a person under 21 years of age, or a person of any age who is physically or mentally handicapped, whose support the registrant has assumed in good faith; and (2) such person must be either a United States citizen or live in the United States, its Territories or possessions, or in a co-belligerent country, its territories or possessions." 622.33(b) provides: "The term 'parent' includes a person who is supported in good faith by the registrant in a relationship similar to that of parent and child" and "(c) the term 'brother' or 'sister' shall include only a person having one or both parents in common with the registrant who is either under 18 years of age or is physically or mentally handicapped." Sections 622.35 and 622.36 provide that the Director of the Selective Service may from time to time prescribe the circumstances under which a person may be considered to be dependent for support upon the registrant; and may direct that "any or all registrants having dependents as defined in section 622.32 be classified or reclassified in the same manner as registrants who do not have such dependents"; but so far as I am advised the Director has not prescribed rules under these latter regulations.

Section 310 of the 1940 Act contains administrative provisions. Thereby the President is authorized to prescribe the necessary rules and regulations to carry out the provisions of the Act; to create and establish a Selective Service System; to provide for the classification of registrants, to establish civilian local boards including appeal boards and agencies of appeal that may be necessary to carry out the provisions of the Act; each county of the state to have at least one local board, to consist of three or more members; and the local boards to have the power to hear and determine, subject to the right of appeal to the appeal boards, all questions of claims with respect to inclusion for or exemption or deferment from, training and service of all individuals within the jurisdiction of such local boards; and "the decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe."

Under these statutes, regulations and judicial decisions applying them, it is apparent the only question presented in the instant

case is whether the classification of Cameron in 1-A by the Local Board resulted from a fair hearing or hearings given to him and was based on substantial evidence before the Board, and was not the result of arbitrary or capricious action. In this connection it is to be noted that the petition does not, at least expressly, allege that the action of the Local Board was arbitrary or capricious. It is apparent also from the respondents' answer, not formally traversed in the case by the petitioner, but in general supported by the testimony at the hearing here, that the action of the Local Board resulted not only from one but numerous hearings with respect to the registrant's proper classification. It thus, appears that Cameron registered with the Local Board on January 28, 1941, that he filed answers to a questionnaire in which he claimed as dependents his mother, Grace Thiede, and his sister Marie Jane Thiede, then residing in Ohio; on February 11, 1941, the Board gave him a hearing and then classified him in class 1 and ordered him to take a physical examination; after passing which he was classified as 1-A on March 4, 1941 but deferred from induction until June 30, 1941 in order to give him an opportunity to arrange his business before going into the Army; that on June 24, 1941 he was given an additional deferment until July 30, 1941 for the same reason; on September 3, 1941 he was classified in class 1-H because he was over 28 years of age (to wit 32); that on December 31, 1941 in view of the statutory changes with respect to age limit, he was reclassified in class 1-A, from which he appealed to the Board of Appeals on January 8, 1942; and the Board of Appeals affirmed the Local Board placing him in class 1-A; that on February 8, 1942 Cameron requested the Chief Inspector of the Selective Service System to make an investigation of his classification; the matter was then referred to the National Director and on February 26, 1942 Cameron filed with the National Headquarters some further evidence not submitted to the Local Board or the Appeal Board; on March 31, 1942 the National Headquarters returned the file for reopening the matter by the Local Board in the light of the new evidence submitted; that Cameron was then advised by the Local Board to submit the further evidence that he had in reference to his claim for deferment, and after having done so on July 7, 1942 he was again classified in 1-A by the Local Board, from which he filed an appeal with the Appeal Board on August 8, 1942, and the Appeal Board affirmed the decision of the Local Board and again placed him in class 1-A; and that on August 22, 1942 he was ordered to report for induction.

In view of this undisputed case record it cannot be successfully urged that the registrant did not have adequate hearings in accordance with due process. Nevertheless the contention is urged that his classification as 1-A was arbitrary and capricious by the Local Board because without substantial evidence and by reason of personal bias and hostility against him. The testimony submitted in this court in support of this contention took a rather wide range, and in substance probably reiterated for the most part the evidence submitted before the Local Board whose action was affirmed by the Board of Appeals. While the permissible scope of review here does not properly include a determination of the real merits of the case, the whole of the testimony offered on behalf of the petitioner has been considered from the standpoint of whether the conclusion of the respective Local Boards and Appeals Boards could be said to be arbitrary and capricious or not founded on substantial evidence. I have reached the conclusion that the petitioner has not affirmatively established this contention.

The testimony at the hearing was not stenographically reported, and it is not considered necessary to review it in much detail. The precise issue before the Boards was whether the petitioner, the registrant's mother, was dependent in fact on the registrant, her son, for support in a reasonable manner from his income earned in a busi ness, occupation or employment, and whether the son had assumed in good faith the mother's support. It is not asserted that the alleged dependency of the registrant's sister who is more than 18 years of age, would be a sufficient ground for his classification in 3-A. It is admitted that the mother was divorced from her first husband some years ago and received some alimony from him until she remarried, and that her present husband is living although the husband and wife are separated. It was not satisfactorily shown the living husband is not legally obliged to support his wife, who says that she separated from him on account of serious ill-treatment. It appears that the Board heard and considered a considerable amount of evidence, some apparently hearsay, bearing on the questions of fact as to

whether the registrant had in good faith assumed the support of the mother and that she was really dependent upon him. It also appears that the most direct evidence submitted to the Board with respect to this fact was that of the registrant, his mother and sister, and if fully credited by the Board would have justified Cameron's classification as 3-A. But there was also some evidence before the Board to the contrary which I cannot say was not substantial; and there were circumstances in the case which could fairly and properly have been considered by the Board as throwing substantial doubt upon the reliability of the direct testimony of the registrant as to his status with respect to his mother. It appears that when first questioned by the Local Board upon this subject he was uncooperative in answering their questions and the answers to his original questionnaire did not disclose the fact that his mother had a living husband. It also appeared at the hearing here that the registrant had made a deliberate false statement in the answers to his questionnaire upon the subject of the extent of his education in that he stated that he had attended Ohio State University for three years when in fact he had never attended there at all. The answers to the questionnaire were made under the registrant's affidavit. The false statement seemed to have no relevancy to the subject matter of his mother's dependency but it does have a bearing on the reliability of the registrant's testimony as a witness in this case. It also appears that the general attitude of the registrant and his mother toward the Board was one of friction rather than of cooperation.

In 1941 Cameron was conducting a small roadside restaurant on the State Highway near Cumberland. The property was leased by him and had to be vacated at the end of 1941. Thereafter in 1942 he admitted that his only substantial income was derived from his activities as a bookmaker's broker, a conceded illegal activity. He says that he was unable to obtain other income from legitimate sources because by reason of his classification as 1-A he was unable to obtain employment as he was likely to be soon inducted into military service.

■ Possibly it may be inferred that the final determination of the Local Board that Cameron had not in good faith assumed his mother's support and that she was not in fact substantially dependent upon him resulted more from the discredit

by the Board of the direct testimony of Cameron, his mother and sister, than from positive and direct proof to the contrary. But the issue of fact was properly within the province of the Board and is not to be redetermined on the merits by this court if there was substantial evidence to support the finding made, and the action of the Board was not arbitrary and capricious. And even if the Board's decision was based principally on discrediting the registrant's testimony, that does not of itself justify the conclusion that the determination of the Board was improper (Chin Yow v. United States, 208 U.S. 8, 11, 12, 28 S.Ct. 201, 52 L.Ed. 369), unless the rejection by the Board of the registrant's testimony was arbitrary and capricious. He contends that it should be so considered principally because of his belief, supported as he contends by some circumstantial evidence, that the clerk of the Local Board desired to obtain control of his restaurant business in 1941 and therefore wished to have him inducted as soon as possible into the military service; and it is argued that the influence of the clerk in effect poisoned the minds of the members of the Board against the registrant and caused them to reject his positive testimony as to his mother's dependency, and to disregard some supporting evidence from other apparently disinterested persons. But I do not find that the registrant's suspicions in this respect are supported by substantial evidence. The clerk of the Board was not summoned or examined as a witness in this case. Nor did the Local Board merely summarily reject the testimony of the registrant without investigation (as in Arbitman v. Woodside, supra), but on the contrary did quite fully investigate the matter by extensive inquiries from numerous witnesses, whose evidence, even though to some extent hearsay only, cannot be fairly disregarded as wholly unsubstantial.

■ Furthermore, we cannot disregard the affirmance of the Local Board by the Appeals Board. There was some contention that the record transmitted on appeal by the Local Board to the Appeals Board was not sufficiently full and accurate, and that various letters of transmittal by the Local Board to the Board of Appeals were argumentative and contained prejudicial and unwarranted inferences as to some of the facts. But I am unable to find from the testimony that this contention is supported by satisfactory and substantial evi-

dence. And there is certainly nothing to indicate any personal bias or hostility or arbitrary action by the Appeals Board in this case.

As a result of the above discussion of the evidence at the hearing here, I make *the ultimate finding of fact* that the actions of the Local Board and more particularly the Board of Appeals in this case were not arbitrary or capricious but were based on legally substantial evidence. And the conclusion of law necessarily is that the petition must be and is hereby dismissed with taxable court costs to be paid by the petitioner.