**UNITED STATES ex rel. BAYLY v. RECKORD, Commanding Officer, Third Corps Area.**

**UNITED STATES ex rel. BEVANS v. STONE, United States Navy.**

Civil Actions Nos. 2025, 2024.

District Court, D. Maryland.

Aug. 16, 1943.

Wilfred T. McQuaid, of Baltimore, Md., for Bayly and Bevans.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimire, Md., and F. Cleveland Hedrick, Jr., Asst. Gen. Counsel, Selective Service System, of Washington, D. C., for respondents.

CHESNUT, District Judge.

In these two habeas corpus cases the petitioners seek present release from the Army and Navy respectively on the ground that in ordering their induction at this time their local Selective Service Board intentionally disregarded the applicable regulation prescribing the order of selection for inductees. In their answers filed in the cases the respective respondents take the position that they have no direct knowledge or official information as to the propriety of selection of the petitioners by the Local Board but that they have been informed by the Board that the selection was proper, despite the regulation, because the petitioners could have been properly selected for induction at an earlier period if they had not been granted a deferment as to time of induction by the Local Board. The cases have been heard on testimony and arguments of counsel in open court. From the evidence in the case I make the following findings as to the principal facts developed.

1. The controlling facts as to both petitioners are substantially the same. Both are "men who have wives with whom they maintain a bona fide family relationship in their homes", which status was acquired by them for many years prior to December 8, 1941. Both were ordered by their Local Board No. 1 of Worcester County, Maryland, to report for induction in the Armed Forces of the United States on July 28, 1943. On that date Bayly was inducted into the Army and Bevans into the Navy. Bayly will be 38 years old in November 1943, Bevans is now 36 years old.

2. Both men reside in Pocomoke City, Worcester County, Maryland, and both duly registered prior to 1941 with their Local Board. Both received serial numbers and after the general lottery drawing of serial numbers in Washington, the order number of Bevans became 36 and that of Bayly 506. In November and December 1940 both were classified in Class 3 as married men with dependents. See 5 F.R. 3930, par. 354. Later, February 3, 1943, pursuant to au-

thorized changed regulations (See 7 F.R. 5342) both men were reclassified by the Board as Class 1–A and placed in category or group 3 in Class 1–A. Both were declared physically fit after physical examination. On February 3, 1943, Bayly by letter to the Local Board asked for a deferment as to time of call for service. Bevans did not personally make a similar application but his employer made it for him. On February 12, 1943, the Local Board denied both applications for deferment and so advised both men. After conference with the government Appeal Agent for the Board, both men appealed in due time to the Board of Appeals from their reclassification. On March 23, 1943 the Appeal Board affirmed the reclassification of both men in 1-A but recommended to the Local Board that a stay of induction for sixty days be granted. On March 26, 1943 the Local Board acted on this recommendation by deferring the men with respect to time of call to May 23, 1943.

3. Thereafter the next monthly call upon the Local Board by the Director of the State Selective Service was for ten white men to be furnished in June. The order of selection of registrants on the register of the Local Board at that time was prescribed by regulation issued under the authority of the basic statute (50 U.S.C.A. Appendix, §§ 304, 305(e) (1) and 310). This regulation read as follows:

"632.3 *Selection of Men to fill Induction Call.* (a) Each local board when it receives a call, shall select a sufficient number of specified men to fill the call. It shall first select specified men who have volunteered for induction. To fill the balance of the call, it shall select specified men from such group or groups as the Director of Selective Service may designate, provided that within the group selection shall be made in sequence of order numbers."

At that time Gen. Lewis B. Hershey, Director of the Selective Service, had issued instructions or a so-called directive to the Local Boards, known as Memorandum No. 123, as amended April 27, 1943, which, in paragraph 9 provided as follows:

"9. *Filling Calls.* When a local board is filling a call it should first select and order to report for induction specified men who have volunteered for induction. To fill the balance of the call it shall, from the groups listed below, and insofar as possible in the order in which the groups are listed, select and order to report for induction specified men finally classified in Class 1–A and Class 1–A O who are available for induction."

The groups then listed in their order of sequence are as follows: (1) Men with no dependents; (2) men with collateral dependents; (3) married men (group 4 is immaterial here).

4. The Board generally left to its clerk the preparation of the list of men to be selected to fill the quota call. The quota for June was for 10 white men. The clerk prepared the list from the register in accordance with the regulations and placed upon the list the names of ten volunteers. The Board approved the list so selected for June, but the chairman of the Board subsequently told the clerk that he ought to have included the names of Bayly and Bevans, although they were married men classified in 1–A, group 3, and therefore not properly to be selected under the regulations and directive until there were first selected to fill the call volunteers and men with no dependents, that is, single men. It appears the clerk told the chairman of the Board that that procedure was not in accordance with his understanding of the applicable regulations.

The next monthly quota call on the Board was for 22 white men to be furnished for induction on July 28. At this time the Board varied its ordinary course of procedure by making the selection of the 22 names itself and not leaving the selection to the clerk. I find from substantial evidence, and in the absence of any contradictory evidence, that at that time, July 12, 1943, there were then available to supply the call at least 25 volunteers and single men without dependents. Nevertheless the Board in making up the list of 22 included on the list 17 volunteers and single men without dependents, and 5 married men, including Bayly and Bevans.

On July 13, 1943 the government Appeal Agent for the Local Board (L. Paul Ewell, a well-known lawyer of Worcester County of long experience) wrote a letter to the Board calling attention to the erroneous method of selection that the Board had applied in making the call. The attention of the Board was specifically directed to the applicable regulations and directive and it was pointed out that eligible and available registrants to the number of more than 22 were classified in groups to be called prior to group 3 which included married men. After delivering this letter to

the Board the Government Agent talked with the chairman and suggested that he would be glad to confer further with the Board, but he was informed by the chairman that the Board had received and read his letter and decided to "ignore" it. The duties of a Government Appeal Agent are stated in Regulation 603.71, which in part states—"It shall also be the duty of such government appeal agent, where the interests of justice may require, to suggest to the local board a reopening of any case and to impart to the local board any *information* which in his opinion ought to be investigated."

5. Bevans and Bayly then applied to the State Director for relief and their applications were endorsed with the approval of the Government Appeal Agent. The applications were denied by the State Director. The Appeal Agent also wrote a further explanatory letter dated July 17, 1943 to the State Director. To this the State Director replied on July 20, 1943, in which he said among other things: "A further check was made with the Local Board as to the available 1–A single men who had not been called as well as the volunteers and it was found that there was a good reason why each of them had been skipped in the induction list." The State Director testified as a witness in this case and when his attention was called to this particular paragraph of his letter to the Appeal Agent, and he was asked what was the "good reason" therein referred to, he replied that he had talked by telephone with the chairman of the Local Board who had told him that the procedure had been regular in all respects, and that he had accepted this statement without further or more particular inquiry.

6. Promptly after their induction on July 28, 1943 the petitioners by their counsel filed applications for release by writ of habeas corpus, no further administrative remedy being then available to them.

7. All three members of the Local Board and also its clerk and the government Appeal Agent testified as witnesses at the hearing. The effect of the testimony of the clerk of the Board and of the government Appeal Agent was that the names of Bayly and Bevans should not have been included in the list for induction according to the prior practice and their understanding of the regulation. The general effect of the testimony of each of the three members of the Board was that they inten-

tionally disregarded the regulation and directive as inapplicable, and that they included Bayly and Bevans in the list because they had received a postponement of call which had expired and that they could and would have been inducted had there been no deferment and that, as they thought, in justice to single men who had become available subsequent to the time when Bayly and Bevans might have been inducted, except for the deferment, therefore Bayly and Bevans should be placed at the head of the list to be then selected. (One of the members rather briefly said that he did not agree with the regulation). The evidence, however, showed that at least one of the other married men included in the selected list for July had not made application either by himself or by his employer for deferment at the time of call and would probably have been previously called except for the pendency of his appeal for reclassification. The members of the Board were not actuated by any personal bias or feeling against any of the five married men selected for inclusion in the July list including the two petitioners.

■ My *conclusion of law* is that the action of the Local Board in intentionally disregarding the applicable regulation and directive and thus including the petitioners in the July quota list was legally arbitrary and capricious; and the petitioners are entitled to be now presently released from custody.

The case must be decided, of course, upon its own particular facts. Counsel are agreed that it has no precedent under the Selective Service Act for the First World War nor is there any which has so far arisen under the present law. Possibly this is true because no Local Board has heretofore undertaken to substitute its own judgment as to the order of selection and induction for an applicable regulation upon the subject.

I shall not undertake a meticulous analysis or review of the Selective Service Law or the numerous regulations thereunder. It is sufficient to point out that the three major steps in the procedure for selection of persons to be inducted into the Armed Forces of the United States are (1) registration; (2) classification and (3) selection. The basic Act is that of September 16, 1940, 54 Stat. 885, 50 U.S.C.A. Appendix §§ 301 to 318, as amended November 13, 1942, 56 Stat. 1018. Sections 304, 305(e) and 310 are particularly applicable to this

case. Section 301 declared the policy of Congress to be that the obligations of military service "should be shared generally in accordance with a fair and just system of selective compulsory military training and service." Sections 304, 305 and 310 expressly authorize the formulation of regulations for the particular application of the Act in details of selection of individuals for military service. Section 305(e) (1) expressly authorizes regulations to provide for deferment of married men, with or without children. These regulations have been duly made from time to time. The one that is particularly applicable to this case has been quoted above.

■ It will be noted that this case does not involve any question relating to either registration or proper classification. It relates only to the manner of *selection* by a Local Board to fill a particular quota for a particular month. Furthermore, the case does not involve any review by the court of the exercise of judgment by the Local Board in the actual application of an applicable regulation, but only the question whether, where the Board intentionally disregards the applicable regulation, and inducts individuals who would not have been inducted if the regulation had been followed, the persons so inducted should properly be released on habeas corpus, until thereafter in due course of the law and regulations they are properly called for service. The statute does not provide for any judicial review as such by the courts of the administrative action; but it is clear enough that under the general power of the court to release persons unlawfully detained in custody by the writ of habeas corpus the court is under the duty to release these petitioners from present military service if the law of the land with respect to their selection and induction has been disregarded by the administrative tribunal to their prejudice. United States v. Bowles, 3 Cir., 131 F.2d 818, affirmed 63 S.Ct. 912, 87 L.Ed. ——, May 3, 1943. In Hirabayashi v. United States, 63 S.Ct. 1375, 1389, 87 L.Ed. —— June 21, 1943, Mr. Justice Douglas in a concurring opinion, referring to a line of cases under the Selective Service Act said: "But that line of authority holds that after induction he may obtain through habeas corpus a hearing on the legality of his classification by the draft board". In note 2, following this sentence, are cited numerous cases arising under the Selective Service Act, including United

States v. Embrey, D.C., 46 F.Supp. 916, 918, a case in this court where, after referring to the "Judicial Review of Selective Service Board Classifications by Habeas Corpus"—the George Washington Law Review, Vol. 10,827, it was said: "The effect of these cases as to the scope of judicial review of actions of Local Draft Boards is that the courts will not interfere with the action of the Board unless the classification order of the registrant under the Act has been made without a fair hearing, or the action of the Board has been arbitrary or capricious, or not based on substantial evidence. And this was the view taken by the Circuit Court of Appeals for this Fourth Circuit in a case under the 1917 Act. Arbitman v. Woodside, 4 Cir., 258 F. 441." See also Goff v. United States, 4 Cir., 135 F.2d 610, 612; Rase v. United States, 6 Cir., 129 F.2d 204, 207; Baxley v. United States, 4 Cir., 134 F.2d 998, 999.

■ Ex parte Stanziale, D.C.N.J., 49 F.Supp. 961, 962, was a habeas corpus case in which the petitioner had been inducted by order of his Local Board at a time when he was married and had one child. In ordering petitioner's release the District Judge said—"The regulations issued for the guidance of local boards under the provisions of the Selective Training and Service Act, are the controlling factor in the determination of the status of any individual in relation thereto; and the various local boards, while they may pass upon the factual questions involved in such determination, may not, arbitrarily or capriciously, substitute any other standard than, or disregard, the explicit intent of the regulations. Neither zeal nor personal disagreement with the effect produced by impartial enforcement of the regulations should influence the conclusions to be arrived at in classification of any person subject to the provisions of the Selective Training and Service Act and the regulations issued thereunder." I think this is a correct statement of the law to be here applied. Counsel state that case is now pending on appeal in the Third Circuit, but that the ground of the appeal does not challenge the applicable law as so stated, but is rather on the facts of the case.

■ The argument for the respondents in these cases, by the Assistant United States Attorney for this district, does not challenge the propriety of the procedure by habeas corpus; but contends that no prejudice has resulted to the petitioners in

their present induction into the Service, because they could have been properly inducted into the Service in the April, 1943 quota call by the Local Board if the time of their call had not been postponed until May 23, 1943 by the Board. In this connection attention is called to evidence in the case which I find sufficiently established the following facts, although I have not included them in the above finding of facts because deemed immaterial. It appears from the evidence that to fill the April quota of the Local Board the number of available volunteers and single men without dependents was not sufficient, as the registration lists then stood, to fill the quota, and therefore it was necessary to include a certain number of married men; and that if the petitioners, Bayly and Bevans, *had then been selected* from the list of married men their order numbers were such that they would properly have been included in the call for April. It is also pointed out that the action of the Appeal Board in recommending, and of the Local Board in granting, the petitioners a sixty day extension, was irregular in that by regulation 633.1(a) and (b) a stay of induction should only be granted by the Local Board *after* a registrant has been duly *selected* to fill a quota and notified to report for induction not less than ten days thereafter. (The evidence further shows, however, that it was customary and frequent practice of the Local Boards, or at least this particular Local Board, to grant extensions of time to registrants in Class 1-A before their selection to fill a quota and before issuing an order to them to report for induction. Possibly the practice was due in part to the wording of the regulation as it stood prior to the promulgation of 633.1. See 6 F.R. 1814, par. 418b. It does not appear that this customary practice had been previously criticized by superior officers in the Selective Service System). Thereupon it is now argued for the respondents that despite the failure of the Local Board to *actually select* the petitioners to fill the April quota and despite the actual failure of the Board to order their induction, nevertheless, because the Board could have properly selected and ordered them to be inducted in the April quota, it should now be held retroactively that there was a *constructive* selection and order for induction by the Board in April. In other words, it is said that the court should consider that the Board actually did what it might have done but did not do.

At the argument I requested counsel for the respondents to formulate their contention as a definite legal proposition. They have put it into the following form: "Respondent prays the Court to find that when a registrant has been duly reached for induction and he should have been ordered to fill an induction call but was given a temporary postponement of induction at his request or on his behalf, at the expiration of such requested postponement such registrant should properly be inducted on the next call, regardless of any intervening changes in order and priority of registrants for induction." Counsel have not referred me to any authority in support of this proposition in the administration of the Selective Service Law, and I know of none. It is highly undesirable to confuse the administration of the Act by introducing the fiction of a *constructive* selection for the simple reality of an actual one by the Local Board. And to do so would run counter to Regulation 601.12, which defines a "selected man" as "any registrant who has been designated by a local board to fill a call."

The proposition seems to mean that if by mistake or inadvertence a registrant could have been selected in a particular month, and the mistake is not discovered by the Board for several months thereafter, the Board may then at once order the induction of the omitted name despite intervening changes in the registry list, or despite amended regulations applicable thereto. Indeed it is further argued here that, under the regulations and directive No. 123 until amended April 27, 1943, the Local Board was not obliged to select men to fill quotas in the order of the groups or categories definitely prescribed by the amendment of April 27, and therefore the selection of the petitioners in July, after the amended regulation or directive, was not necessarily to be governed by the amendment. In essence the proposition would allow the Local Board to disregard the prescribed basis of selection applicable at the time when made and substitute, on its own judgment, regulations previously but no longer effective. It is a comparatively simple matter for the Board to apply the regulation in force at the time a selection is made to the state of its registry at that time; but it introduces a large element of uncertainty of application if the Board is at liberty to disregard the presently effective regulation and prepare lists retrospectively as of a prior date. It is not

contended that there is anything expressed either in the basic law or in the regulations which authorize or even contemplate such a rule of action by the Local Board.

In addition it may be pointed out, as a further criticism of the proposition as formulated, that it does not appear from the evidence that it is applicable to the facts of this case. It is predicated on the condition that the "registrant has been duly reached for induction" at some prior date. It also seems to assume that the registrant asked a temporary postponement because he had been duly reached for induction. In this case it does not appear that the application for postponement was made by the petitioners because they knew they had then been reached for induction; but only because they had been reclassified in 1–A and were liable to be called sooner or later. Their evident reason for asking a postponement was that they wanted to be assured that they would have freedom from actual call for a minimum length of time if they were otherwise properly subject to call within that time. Their application for postponement was made early in February. The evidence does not show that they had been reached for induction at that time. The required procedure for induction is that there must (1) be a quota call on the Local Board, and it must then (2) make the *selection* of the names on the register, in accordance with the regulation, and (3) notify the registrant to appear on a certain day (not less than 10 days thereafter) for induction. There is no evidence to show that these petitioners could have been properly selected in February from the register as it then stood, as there may have then been an ample number of volunteers to fill the call for that month, or for the next call for March, and it is certain that they were not then, or thereafter until July, in fact selected.

The proposition as formulated also seems to be based on an element of estoppel against the petitioners. That is to say, because the petitioners asked for a stay (in Bayly's case in order to train an employe to carry on his business) their case must be judged as it now arises not on the conditions existing at the time of their selection but at the time they made their application for delay. If the proposition is sound at all it would apply equally well to a case where the registrant appeals from the Local Board to the Appeals Board with respect to the classification. And indeed this is exactly what occurred in the particular case. The stay, although first denied by the Local Board, was granted as a result of the recommendation of the Appeals Board. The stay as finally granted by the Local Board was until May 23rd. If the appeal had not been finally disposed of until May 23rd, it could hardly be contended that the petitioners could properly have been included in the call for June or July, unless their selection then was in accordance with the applicable regulations as applied to the then existing state of the register. And it is significant, in considering the basis of action by the Local Board in this case, to note that one of the married men included in the July call, had not asked for deferment in call, but only taken an appeal. But I understand that counsel does not contend that a delay consequent upon appeal would justify a retroactive constructive induction order where no order for induction had in fact previously been made by the Local Board. The contention would indeed be directly in the teeth of regulation 627.41 which provides that "a registrant shall not be inducted either during the period afforded him to take an appeal to the Board of Appeal, or during the time such appeal is pending". It is evident, therefore, that there was no legal possibility that the petitioners could have been properly selected by the Board for induction prior to March 26 when they were notified that their classification appealed from had been affirmed by the Board of Appeals, but at the same time the Local Board, acting upon the recommendation of the Board of Appeal granted the petitioners a deferment until May 23, 1943. This, of course, was entirely inconsistent with the idea that the action of the Board at that time should be treated as a constructive induction order.

The simple, easily applied and correct rule in these cases is to apply the regulation in force to the conditions existing at the time of actual selection of the registrants by the Local Board. It is suggested that thereby in some cases some registrants may take frivolous appeals or apply for stays merely by way of "stalling" for time, to take advantage of changes in the register. The evidence in this case does not even suggest that these petitioners were so actuated. But in this connection it is not out of place to note that section 304(a) of the Act recognizes and provides

for fluctuations in the state of the Local Board registers from time to time with respect to classes or groups of men available for selection in their respective orders. Thus the last clause of section 304 (a) is as follows: "and in the selection for induction of persons within the jurisdiction of any local board and within any particular classification, persons who were registered at any particular registration may be selected, in the manner prescribed by and in accordance with rules and regulations prescribed by the President, before, together with, or after persons who were registered at any prior registration or registrations."

Some subordinate contentions are also advanced for the respondents. One is that the evidence does not sufficiently show that there were enough available volunteers and single men without dependents to supply the July quota, without selecting some married men. The short answer to this is that the testimony of Mr. Ewell, the Government Appeal Agent, with that of Mr. Smollin, the clerk of the Board, sufficiently shows that there were, at least prima facie. In addition the chairman of the Board admitted in his testimony that this was probably right. The records of the Board were also produced in court and before the close of the testimony the Court offered an opportunity to counsel for the respondents to have an exact computation made from the records if it was desired to submit more exact data upon the subject. This opportunity was declined. The Board itself made no examination of its records as a basis for including the petitioners in the July list.

■■■ Another contention urged is that the regulation and directive required the Local Board to make selections in the prescribed order of groups only "so far as possible", and in this connection it is also urged that the court should be slow to interfere with the purely executive function of the Local Boards in supplying the necessary personnel for the Armed Forces; and therefore minor errors in the selection of registrants should not be made the basis for their release by the courts. I am in accord with this proposition but think it quite inapplicable to the facts of this case. The Board here made no effort to apply the regulation but intentionally disregarded it, and substituted therefor its own judgment as to the order of selection of registrants. It first departed from its customary practice by taking the selection out of the hands of its experienced clerk, and then ignored the specific letter and protest of the Government Appeal Agent, and further answered the inquiry of the State Director of Selective Service by simply assuring him that the procedure was entirely regular, and without informing him of the particular facts. In departing from its prior practice and disregarding the regulation, it sought no independent official advice. We are, therefore, not dealing with a case where the selection of the petitioners was the result of mere inadvertence or clerical mistake in the intended application of the regulation, but on the contrary there was an intentional disregard of it. The chief functions of the Local Boards are first in the classification and second the selection of registrants. The classification necessarily involves the exercise of administrative judgment and discretion based on facts applicable to each registrant. As has been heretofore pointed out, in the absence of any provision in the statute for judicial review, the courts refuse to interfere with the administrative function in this respect unless there has been a fundamental lack of due process to such an extent that the administrative determination can properly be termed arbitrary or capricious. But the order of selection of registrants to fill a particular call stands on a somewhat different basis in that it is particularly prescribed by the regulations and ordinarily involves simply the application of the regulation to the state of the register at the time. Even here also the courts should not undertake to review mere errors or irregularities resulting from the exercise of judgment or discretion by the Local Boards in applying the regulation. But public confidence in the just and legal administration of the Act would be impaired if the statutory provisions respecting the order of call of registrants could be disregarded by the Local Boards. It is well known that during the passage of the Act and still presently today, there is the keenest concern over the required order of selection of different groups. This was succinctly expressed by the Director, Gen. Hershey, in his Local Board Release No. 123, April 12, 1942 as follows:

"(b) Congress, during the consideration of this legislation, indicated the desirability of selecting first substantially all registrants without dependents; and, as registrants with dependents (except those who, after considering all factors set forth in paragraph 2 below, still actually depend

for support on the registrant) are selected, the desirability of selecting next substantially all registrants, other than those maintaining bona fide family relationships in their homes with their wives, wives and children, or children; and when it is necessary to consider registrants in this latter group, the desirability of selecting substantially all those with wives (but no children) before selecting those with wives and children or children."

The contention that the individual petitioners are estopped to complain of the disregard of the regulation for the order of selection misconceives the purpose of the regulation. Its primary purpose was to express the national policy in the order of selection of registrants to promote the public economy, with due regard to the efficiency of the military power. And the regulation must be observed, not so much out of tenderness for the individual, but for the public benefit. It is incidental only that the petitioners, as individuals specially affected, are entitled to invoke the application of the regulation.

No personal criticism of the members of this Local Board is intended to be expressed or implied. On the contrary it is recognized that they acted in personal good faith and without bias or prejudice against these petitioners, or other married men included in the particular call. Furthermore it is to be appreciated that these Local Boards are performing a highly important public service without compensation and are entitled generally to credit and appreciation by the public for their cheerfully performed and uncompensated public services. They are, however, not above the law, and, like other public officers, must comply with it. It is not disputed by counsel for the respondents that if the Board had included in its selection in July a "father", as the law and regulations then stood, it would be the duty of the court in this case to release him. Under the applicable law and regulations the same duty exists with respect to the inclusion of married men under the facts of this particular case.

Finally, it is to be observed that the present release of these petitioners does not exempt them from a subsequent order for induction when they have been selected in accordance with the then applicable regulation.

Counsel may submit the appropriate order in due course.