## Ex parte STANZIALE.

## Appeal of PAULLIN, Commanding Officer, Fort Dix, N. J.
### No. 8363.

Circuit Court of Appeals, Third Circuit.
Argued Sept. 8, 1943.
Decided Oct. 6, 1943.
Writ of Certiorari Denied Dec. 13, 1943.
See 64 S.Ct. 267.

Thorn Lord, Asst. U. S. Atty., of Trenton, N. J. (Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellant.

George R. Sommer, of Newark, N. J., for appellee.

Before JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

Adolph Stanziale was inducted into the armed forces of the United States in January, 1943. On April 20, 1943, his wife, Ann Stanziale, filed a petition for a writ of habeas corpus in the District Court of New Jersey, averring that her husband had been inducted as a result of the arbitrary and capricious action of his Local and Appeal Boards. The substance of the petition was that Stanziale should have been given a deferred classification by reason of dependency. The court granted the writ and after a hearing directed the discharge of Stanziale. The respondent, the Commanding Officer of the Reception Center at Fort Dix, obtained an order staying the discharge and pending the disposition of this appeal, Stanziale was released on bail.

We have had previous cases dealing with the question under what circumstances one whom a Local Board has ordered to be inducted into the armed forces may obtain a judicial review of the action taken by his Board. It is settled, at least in this Circuit, that such review may not be had upon a criminal prosecution for failure to comply with a Board's order for induction[1] or by a writ of habeas corpus[2] or certiorari[3] prior to induction. The judicial opinion has been that review may be had by habeas corpus after induction,[4] although the only appellate decision called to our attention which squarely decided this point under the present Selective Service Act, 50 U.S.C.A. Appendix § 301 et

---

[1] United States v. Grieme, 3 Cir., 1942, 128 F.2d 811; United States v. Bowles, 3 Cir., 1942, 131 F.2d 818, affirmed on other grounds 1943, 319 U.S. 33, 63 S. Ct. 912, 87 L.Ed. —.

[2] Ex parte Catanzaro, 3 Cir., 138 F.2d 100, decided by this Court September 23, 1943.

[3] Drumheller v. Berks County Local Board No. 1, 3 Cir., 1942, 130 F.2d 610.

[4] See authorities cited in Ex parte Catanzaro, supra.

seq., is United States ex rel. Phillips v. Col. Downer, 2 Cir., 1943, 135 F.2d 521. The appellant has assumed on this appeal that judicial review may be had on the procedure followed in this case. We shall make the same assumption in the discussion which follows.

Registrants under the present Selective Service Act and the Act of 1917, 50 U.S. C.A. Appendix § 201 et seq. have met with scant success in challenging their classifications in the courts.[5] But they have elicited from the courts a wide variety of declarations attempting to define the scope of judicial review of actions taken by Local Boards. One commentator has cited decisions under the Act of 1917 to the effect "that a selectee could be discharged from the Army on habeas corpus where the draft board lacked jurisdiction; or where, in proceedings leading up to his induction, there has been a denial of a hearing or a manifest abuse of discretion, arbitrary or capricious actions, findings contrary to all the evidence, or findings contrary to all the substantial evidence."[6] Similar criteria have been advanced under the Act of 1940 and this Court has said, without deciding, that "arbitrary and capricious" action or the denial of a "full and fair hearing" to the registrant affords a basis for judicial review of the Board's conduct. United States v. Grieme, supra [128 F.2d 814]. The application of this terminology to the proceedings of the usual administrative agency is part of the day to day business of courts, and while the terms are perhaps not the happiest in which the scope of judicial review could be described they serve well enough. But because the administrative procedure of the Selective Service System differs so radically from that of the ordinary administrative tribunal, those standards, if used to describe judicial review thereof, must perforce lose their ordinary connotation in administrative parlance.

The task of classification of the nation's manpower for service in its defense differs greatly from the ordinary administrative action affecting an individual or a group. It is country-wide in scope, it includes a large portion of the population and obviously its operation must be both smooth and swift if the public object is to be accomplished. The enemy will not wait for the process of litigation to determine who must and who may not fight.

The procedure under the Selective Service Act necessarily, then, differs from the usual administrative routine. There are no hearings of right where witnesses may be called and examined and cross-examined. There is no representation by counsel either on behalf of the registrant or the Local Board. Nor are findings of fact and conclusions of law made. There is no statutory provision for judicial review. The "administrative tribunal", if the Local Draft Board may so be called, is not composed of experts, real or purported, but of citizens of the neighborhood in which their Board functions. In some cases it knows the registrants personally; in all cases it knows its own community. The analogy of the ancient jury of the vicinage suggests itself, composed of men of the neighborhood, who knew what was going on. Questionnaires answered by the registrant and supporting written statements present his status, from his point of view, to the Board. But these are not the sole determinants of his classification. Quotas that must be filled and the number of registrants available for military service within a given community are major factors for the Board's consideration. All the Local Board does after a consideration of these facts is to place the registrant within one of the given classifications. The registrant, and

---

5 One writer has found only three cases involving wrongful classification under the Act of 1917 wherein the courts ordered the selectees released from the Army: Arbitman v. Woodside, 4 Cir., 1919, 258 F. 441; Ex parte Cohen, D.C.E.D.Va. 1918, 254 F. 711; Ex parte Beck, D.C. Mont.1917, 245 F. 967. Note, Judicial Review of Selective Service Board Classifications by Habeas Corpus (1942) 10 Geo.Wash.L.Rev. 827, reprinted in 2 Pike & Fischer, Administrative Law 386. The appellant states in his brief that there have been only three cases under the 1940 Act in which the courts have ordered the release of a man inducted into the armed forces. Application of Greenberg, D.C.N.J.1941, 39 F.Supp. 13; United States ex rel. Phillips v. Col. Downer, supra; and the present case. See also, United States ex rel. Bayly v. Reckord, 51 F.Supp. 507, decided on August 16, 1943 in the District Court of Maryland, abstracted in 12 L.W. 2110.

6 Note, Judicial Review of Selective Service Board Classifications by Habeas Corpus, supra, at p. 830.

he alone may then appear personally, of right, before the Board to argue the correctness of his classification. Appeals to Selective Service Appeal Boards, and in some cases, ultimately to the President, may be had, but only the written file of the registrant goes up on appeal.[7]

■ It is clear under the procedure prescribed by Congress that the classification of registrants is for the Draft Boards, not the courts.[8] Should a case be one where the court is to interpose, the order should be a <u>remand</u> to the Draft Board to classify the registrant properly, not to make the classification itself.[9] It is also clear that a court's criterion must be something different from the "substantial evidence" rule so familiar in administrative review. There is no transcript of whatever conversations the registrant may have had with his Board. There is no record showing the manpower situation in the district at the time of classification, how many men a particular Board was called upon to furnish at a given time and how big a list of available registrants it had. The test of whether a Draft Board's action may be attacked seems to shift from whether its findings are supported by substantial evidence to whether it received and considered what a particular registrant submitted. And lack of such consideration is not here, as it is not elsewhere, proved by proving that the decision was wrong.[10]

We turn then to the facts of this case. The court below found that Stanziale registered with his Local Board on October 15, 1940, and filed his Selective Service questionnaire on September 2, 1941. He stated therein that he was 24 and married since June 1, 1941, but that he had no children. He lived with his wife, mother and father, and was their sole support, having contributed $1500 to this family group during the previous twelve months, his father being ill and unable to work. His earnings were given at $40 a week, derived from the operation of a tavern wherein he employed seven persons. On January 15, 1942, Stanziale's Local Board placed him in classification III-A.

On April 18, 1942, Stanziale filed a supplemental questionnaire stating that his father had not worked since 1936 because of illness, that his wife was unemployed and expected to give birth to a child in May, 1942. On November 12, 1942, his wife filed an affidavit corroborating statements he had previously made and stating that they now had a child four months old. Stanziale's parents filed affidavits stating that they were unable to work because of ill health and these were buttressed by statements from their physicians. On November 13, 1942, Stanziale was reclassified by his Board in class I-A. On appeal, the Board of Appeals affirmed the decision of the Local Board. The court below concluded as a matter of law that the original III-A classification was proper and that the subsequent I-A classification and order of induction were unlawful, arbitrary and capricious. It accordingly issued the writ and discharged Stanziale. We think that the action taken by the court below was erroneous.

The findings recited were taken from the information contained in Stanziale's Local Board file. If it were our function to review all the facts to determine whether the Board's action was correct, we should also consider the following, brought to our attention in the argument of the appellant: the tavern which Stanziale operated was a family enterprise and had been for several years during part of which time, registrant was a minor; the checking account was in the mother's name and she owned the family home and a farm; there were seven paid employees working in the tavern. Also of significance would be the fact that at the time of his marriage Stanziale was a young man of 24, in good health, in a nonessential occupation and with a comparatively low number. But we do not think that the examination and appraisal of these facts is our function.

■ Petitioner's complaint is that the action of the Local and Appeal Boards in classifying her husband I-A was improper because he had dependents, a wife and a child. It was neither averred nor shown that the Boards failed to consider his evidence or review the facts of his case,

---

[7] See Selective Service Regulations, detailing the administrative procedures. C CH War Law Service, Statutes, p. 18,-601 et seq.

[8] § 10(a) (2) of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 310(a) (2).

[9] See the Note in Geo. Wash. L. Rev., supra.

[10] Chin Yow v. United States, 1909, 208 U.S. 8, 13, 28 S.Ct. 201, 52 L.Ed. 369.

that is give Stanziale a "hearing." Our inquiry might well end here.[11] If the Board considered the case in the light of the facts presented to it the registrant cannot have court review by claiming that a wrong conclusion was reached even if we, were we triers of the fact, might agree with him.

We shall look at the further point urged in argument however, for the case is obviously important to the man concerned and his family and we think he should have our answer to considerations raised on his behalf.

The basis for the alleged wrongful classification appears to be the charge that the Board disregarded Selective Service regulations 622.31 and 622.32 which are set out in the margin.[12] The language used appears to be mandatory and we may assume, for the purpose of examining the point here, that if a Local Board violates the provisions of one of the regulations laid down for its guidance, the person affected by the violation may have court relief. But an examination of the regulations in their entirety shows that there was not in fact a violation in this instance.[13]

■■■ Section 622.36 provided that "The Director of Selective Service, notwithstanding any other provision of these regulations, may direct that any or all registrants having dependents as defined in § 622.32 be classified or reclassified in the same manner as registrants who do not have such dependents."[14] In Local Board Release No. 123, as amended on July 11, 1942,[15] the Director of Selective Service restated the purposes of the Selective Service Act, in the order of their importance, as (a) To provide sufficient men for the armed forces (b) To provide sufficient persons to maintain war production and other essential activities and (c) To protect as long as possible bona fide family relationships and actual dependents. In part IV of the memorandum the Director stated the "Present Policy in Filling Calls." This directed the Boards to call registrants without dependents of any kind first. There are further directions for the reclassification of men in Class III-A to Class I-A starting with men who have wives but no children and leaving for the last men with wives and children, when prior lists of available men have been exhausted and additional men are needed to fill quotas. The regulations and orders of the Director of Selective Service make it plain that there has been no inflexible rule of classification of men who claim deferment by reason of dependency. Many factors beyond Stanziale's personal status were of major importance and we cannot see where the Board's action was

---

11 See Chin Yow v. United States, supra.

12 As amended July 11, 1942, 7 Fed. Reg. 5342.

"§ 622.31 *Class III-A: Man deferred by reason of dependency.* In Class III-A shall be placed any registrant who has one or more dependents as defined in § 622.32 and who is not engaged in a civilian activity which is necessary to war production or which is supporting the war effort. (For exceptions see § 622.-36.)"

"§ 622.31-1 *Class III-B: Man deferred both by reason of dependency and activity.* In Class III-B shall be placed any registrant who has one or more dependents as defined in § 622.32 and who is engaged in a civilian activity which is necessary to war production or which is supporting the war effort. (For exceptions see § 622.36.)"

"§ 622.32 *'Dependent' defined.* To be considered as a dependent of a registrant:

"(a) A person must be the wife or child of the registrant with whom the registrant maintains a bona fide family

relationship in their home, or a person must depend for support upon the registrant and be either the wife or child (with whom the registrant does not maintain a bona fide family relationship in their home), divorced wife, parent, brother, sister, grandparent, grandchild, a person under 18 years of age whose support the registrant has assumed in good faith, or a person of any age physically or mentally handicapped whose support the registrant has assumed in good faith; and

"(b) Such status must have been acquired prior to December 8, 1941, and at a time when the registrant's selection was not imminent."

13 § 626.1(a) provides that no classification is permanent and § 626.2 specifies when a registrant may be reclassified. When a classification is reopened, the case is considered anew and notice sent to the registrant. Such notice was sent to Stanziale.

14 7 Fed.Reg. 5343.

15 American Bar Association, "A Manual of Law for Use by Advisory Boards for Registrants" (2d Ed. 1942) p. 112.

not in compliance with Selective Service Regulations. Petitioner's bare allegation in her complaint that "As far as your petitioner has been able to ascertain, the Local Board with whom Adolph Stanziale is registered, has not called for induction any other married man." does not aid her case. Obviously what is within her knowledge is not necessarily the fact. Even if it were, the reason married men prior to Stanziale were not called may, for aught we know, have been that they had deferments for reasons other than dependency.

Our conclusion is that the petitioner has not shown a case for judicial relief and that the action of the District Court was erroneous.

Reversed.